947 P.2d 944

Alvin H. MORINOUE, Plaintiff–Appellee,

v.

Carlton A. ROY and David D. Roy, Jr., Defendants–Appellants, and The heirs and assigns of Lumaawe; the heirs and assigns of Kealalio; the heirs and assigns of Kekalo; the heirs and assigns of Papa; the heirs and assigns of Daniel Kawaihoa Papa; the heirs and assigns of Lono; the heirs and assigns of Kainaina; the heirs and assigns of Kaoo; the heirs and assigns of Kawaihoolahonua; the heirs and assigns of Kealalio, aka Joseph Kealalio (son of Kealalio); the heirs and assigns of Mary Kaoo Koloheiloe, aka Kaoo Kaloheiole, aka Mary Kaoo; the heirs and assigns of Hoopale, aka Hoopale Kealalio; the heirs and assigns of John A Hoopale, aka John Ahuna Hoopale, aka John Ahuna Achoy; Successor Trustees of John A. Hoopale, Trustee; the heirs and assigns of Lily K. Hoopale, aka Lily Kawaa Hoopale; Margaret Spencer, aka Margaret Spencer Colon and her heirs and assigns, Katherine A. Chun, aka Katie A. Chun, aka Katherine H. Chun, and her heirs and assigns; Emily L. Dulay, fka Emily Watson and her heirs and assigns; Lillian N. Hao, aka Lily N. Hao, and her heirs and assigns; Aileen A. Ho and her heirs and assigns; Margaret Wilhelm, fka Margaret K. Wong and her heirs and assigns; Rebecca A. Brown and her heirs and assigns; Mary Tadame Ishida, fka Mary Tadame Mori and her heirs and assigns; Jack Tadao Mori and his heirs and assigns; the heirs and assigns of Ka–Uina–O–Kalani, aka Abraham Kualaku, aka Abraham Kualaku McAulton; Rose Eleanor McAulton and her heirs and assigns; Torao Mukai and his heirs and assigns; Flora Mukai and her heirs and assigns; Katsuto Taniyama; Mollie T. Tompkinson; Kenneth Koike; George Koike, Kathryn E. Koike; Matsuyo Koike; Bernice H. K. Ishii; Mizukami Miyahashi; Holualoa Korean Association; Richard To. Boswell; Cole J. Boswell; Lance Boswell; Elizabeth Boswell; Maki Ohta and Toichi Ohta; Masayuki Nagatoshi and Nobuko Nagatoshi; Rex Wills and Marilyn Wills; United States of America; John Does 1–50; Jane Does 1–50; Doe Corporations 1–50 and Doe Entities 1–50 and the following owners and/or occupants of adjoining lands: Ricahrds Roes 1–50; Mary Roes 1–50; and Roe Entities 1–50; and all other unknown persons claiming an Estate or Interest in the Real Property described in the complaint adverse to Plaintiffs' Title and to all whom it may concern, Defendants.

No. 19503

Supreme Court of Hawai'i.

Nov. 4, 1997.

Mark Van Pernis of Van Pernis, Smith and Vancil, Kailua–Kona, on the briefs, for Defendants–Appellants Carlton A. Roy and David D. Roy, Jr.

Arlette S. Harada of Elisha, Ekimoto and Harada, Honolulu, on the briefs, for Plaintiff–Appellee Alvin H. Morinoue.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The defendants-appellants Carlton A. Roy and David D. Roy (collectively, the Roys) appeal the amended judgement of the circuit court entered against them and in favor of the plaintiffs-appellees Alvin H. Morinoue and Ayako Mizukami Morinoue (collectively, the Morinoues)[1] on the bases (1) that there was no genuine issue of material fact and (2) that, "as a matter of law, [the Morinoues] . . . established their claim of adverse possession from at least 1924 to 1934 (ten years) to the subject property," thereby "quieting title in their favor."

On appeal, the Roys contend that the circuit court erred in granting the Morinoues' motion for summary judgment as a matter of law because the Morinoues had either failed (1) to establish a prima facie case of adverse possession or (2) to eliminate all genuine issues of material fact. We hold that the Morinoues failed to establish a prima facie case of adverse possession and that they are therefore not entitled to summary judgment as a matter of law. Accordingly, we vacate the amended judgment of the circuit court and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Procedural History

On March 27, 1990, the Morinoues filed an action to quiet title (or, in the alternative, for partition) with respect to a parcel of approximately three acres of land, located in Hōlualoa, North Kona, County of Hawai'i, and described as "Land Commission Award 9932 to Lumaawe" (L.C.A.9932). On June 6, 1990, they amended their complaint to name—as additional defendants—numerous parties who could potentially claim an interest in L.C.A. 9932. On July 31, 1990, the Roys filed an answer to the Morinoues' amended complaint, as well as a counterclaim asserting a claim of title to the property in their own right.

On November 22, 1994, the Morinoues filed a motion for summary judgment, claiming title to L.C.A. 9932 through adverse possession. The Roys opposed the motion by memorandum, affidavits, and exhibits. A hearing was held on March 16, 1995, and, on May 1, 1995, the circuit court entered an order granting the motion, ruling as a matter of law that the Morinoues had "established their claim of adverse possession from at least 1924 to 1934 (ten years) to the subject property," thereby "quieting title in their favor."

"Judgment" in favor of the Morinoues was initially entered on May 10, 1995. The Roys filed their first notice of appeal on May 24, 1995. This court thereafter dismissed the appeal on the basis that the circuit court's "judgment" failed to satisfy the requirements

---

1. On August 23, 1996, Alvin Morinoue filed a suggestion of the death of his mother, Ayako Mizukami Morinoue (Ayako), who passed away on August 6, 1996. Accordingly, Ayako's name was ordered deleted from the caption of this case on August 29, 1996. Because Ayako was a party to the motion for summary judgment addressed in this appeal, we will generally continue to refer to the Morinoues collectively.

of Hawai'i Rules of Civil Procedure (HRCP) Rule 58 because it did not specifically enter judgment against the Roys. *Morinoue v. Heirs and Assigns of Lumaawe*, No. 19009 (Haw. June 21, 1995).

On September 26, 1995, the circuit court filed an order amending the May 10, 1995 "judgment" expressly to state that "judgment" had been entered in favor of the Morinoues and against the Roys "and all other defendants and parties." The Roys filed a new notice of appeal on October 3, 1995, but we dismissed the appeal once again because no separate amended judgment had been entered. *Morinoue v. Heirs and Assigns of Lumaawe*, No. 19310 (Haw. Nov. 30, 1995).

On December 19, 1995, the circuit court finally filed a separate amended judgment in favor of the Morinoues and against all other parties, including the Roys. The Roys filed a third notice of appeal on December 28, 1995, giving rise to the present matter, which we now consider on the merits.

## B. *Factual History*

In support of their motion for summary judgment, the Morinoues attached copies of deeds relating to their claim of title to L.C.A. 9932, an affidavit of their attorney, Arlette Harada, purporting to authenticate the deeds, and an affidavit of Ayako Morinoue concerning the Morinoues' possession and use of the subject property. The Roys appended the following to their memorandum in opposition: (1) a copy of a tax map that reflected, *inter alia*, L.C.A. 9932; (2) a copy of the will of John A. Hoopale, dated March 6, 1949; (3) a copy of the circuit court's order, dated April 13, 1965, approving the executrixes' first and final accounting, as supplemented, regarding the estate of John Hoopale, which determined the devisees entitled thereto, distributed the estate, and discharged the executrixes; (4) a copy of a deed, described *infra*; (5) an affidavit of the defendant Carlton A. Roy attesting in various respects to his family's ownership of

L.C.A. 9932;[2] and (6) an affidavit of Mark Van Pernis, the Roys' attorney, purporting to authenticate the documentary exhibits.

Neither the Morinoues nor the Roys dispute the factual representations contained in the deeds and documents pertaining to John Hoopale's estate, although both challenge the admissibility of a number of them, *see supra* note 2 and *infra* note 5. Lumaawe, the original patentee of L.C.A. 9932, had one son— Kealalio. Kealalio and his wife—Keliiokalani—had one daughter—Kaoo (also known as Mary Kaoo Koloneiole)—and seven sons— Kekalo, Papa, Lono, Kainaina, Hoopale, Kawaihoolahonua, and Kealalio (also known as Joseph Kealalio). Kaoo, in turn, had three children—Alinakai Kepoikai, Ami Charman, and John A. Hoopale. Although the record contains no documentation establishing the prior chain of title to L.C.A. 9932, the Morinoues and Roys each assume as fact that John A. Hoopale had an interest in the subject property by virtue of his relation to Lumaawe. Accordingly, based on different transactions and events, both the Morinoues and the Roys trace their claimed chains of paper title to L.C.A. 9932 from John A. Hoopale.

### 1. *The Morinoues' claim to L.C.A. 9932*

#### a. *title by conveyance*

The Morinoues trace their chain of paper title as follows: On October 13, 1920, John A. Hoopale and his wife, Lily K. Hoopale, sold their interest in L.C.A. 9932 to Kinshiro Yamamoto. Yamamoto sold the subject property to Mitsuru Mizukami on April 12, 1924. On September 26, 1941, Mizukami transferred her interest in the property to her daughter, Ayako Morinoue. On November 16, 1970, Ayako Morinoue transferred a remainder interest in the property to her son, the plaintiff Alvin H. Morinoue, reserving a life estate for herself.

---

**2.** The Morinoues challenge a number of the statements contained in Carlton A. Roy's affidavit as inadmissible hearsay and further maintain that, in any case, the affidavit fails to raise genuine issues of fact. However, because we hold

that the Morinoues have not met their initial burden of establishing a prima facie case of adverse possession, *see infra*, we need not resolve these issues in the present appeal.

## b. *title by adverse possession*

In addition, the Morinoues attached an affidavit of Ayako Morinoue to their memorandum in support of their motion for summary judgment. Ayako Morinoue's affidavit averred in relevant part:

1. Your Affiant is one of the Plaintiffs in the instant action;

2. This Affidavit is made upon Affiant's personal knowledge;

3. Affiant, her mother, Mitsuru Mizukami[,] and/or her son, Alvin H. Morinoue, (hereafter collectively "Plaintiffs" [3]) and their predecessor in interest, Kinshiro Yamamoto (hereinafter "Yamamoto"), have been in actual, open, hostile, visible, notorious, continuous[,] and exclusive possession of Apana of Land Commission Award 9932 to Lumaawe ("L.C.A.9932") since 1920;

4. The property has been farmed by Plaintiffs since 1924;

5. Yamamoto planted coffee trees on the land prior to selling the land to Affiant's mother, and Plaintiffs have planted more trees and tended the coffee trees or hired others to tend the coffee trees since 1924;

6. The first indication Plaintiffs had of a dispute regarding title to the land occurred in about 1952;

7. John Hoopale, who had conveyed the property to Yamamoto, visited Affiant's house twice asking to see the deed because he had not intended to sell his sisters' shares in the property. At that time, Plaintiffs had held the property for thirty years;

8. In 1954, John Hoopale's widow, Lily K. Hoopale, deeded the property to Josephine Roy despite the knowledge that Plaintiffs had title to the property;

9. Josephine Roy and her heirs came to ask about the property. Plaintiffs very clearly told the Roys that Plaintiffs were the rightful owners;

10. Plaintiffs have defended the property against intrusion by posting signs and otherwise discouraging the Roys and others from exercising any unauthorized control over the property[.]

Although the Morinoues' complaint to quiet title in this case alleges rightful title to L.C.A. 9932 by way of both formal conveyance and adverse possession, their motion for summary judgment is grounded exclusively in the theory of adverse possession and relies on Ayako Morinoue's affidavit as the sole evidence establishing the requisite elements.

### 2. *The Roys' claim to L.C.A. 9932*

The Roys seek to establish their chain of paper title to the subject property from the following events: On June 19, 1940, Alinakai Kepoikai and Ami Charman sold their interest in L.C.A. 9932 (and other lands in North Kona) to their brother, John A. Hoopale. John A. Hoopale died on July 19, 1951, devising all of his real property to his wife—Lily K. Hoopale—for life, and then to his children—Katie A. Chun, Emily Watson, Dorothy Cram, Lily N. Hao, Aileen A. Ho, Margaret K. Wong, and Rebecca A. Brown—and two of his grandchildren—Mary Tadame Mori and Jack Tadao Mori—in equal shares for life, the vested remainder in fee simple absolute to pass to his other grandchildren. Lily K. Hoopale elected to take her dower, as provided by statute, rather than proceeding under the provisions of the will. The record, however, is unclear as to the precise interest that Lily K. Hoopale claimed in L.C.A. 9932 as a result of her election. On April 6, 1954, Lily K. Hoopale—despite her election—undertook to sell her interest in L.C.A. 9932 to Josephine Roy, who was the mother of the defendant Carlton A. Roy. In this connection, as an exhibit to their memorandum in opposition to the Morinoues' motion for summary judgment, the Roys attached a copy of a deed whereby Charles D.K. Roy and Heather K. Minton, as trustees of the estate of Josephine Roy (who, by the express terms of the instrument, was alive on July 8, 1986), transferred such title, derived from Josephine Roy's purchase from Lily K. Hoopale, as they possessed in L.C.A. 9932 to the defendant Carlton A. Roy.

Lily K. Hoopale died on November 7, 1954, before her husband's estate was closed, and her claim for dower was subsequently disal-

---

3. The record nowhere reflects that Mitsuru Mizu-     kami is a named plaintiff in this case.

lowed by the circuit court. Instead, the circuit court ordered the Hoopale estate, including L.C.A. 9932, distributed to the remaining "nine life-interest beneficiaries named in the [w]ill."

As reflected in similarly worded deeds, "David K. Roy, Jr." purchased "all of the grantor[s'] right[s], title, interest[s,] and estate[s] in certain described real property, located "in the land of Holualoa, in the district of North Kona, Island, County[,] and Territory of Hawaii," from four of the nine "life-interest beneficiaries," in the following order: (1) Margaret K. Wong on November 29, 1958; (2) Aileen A. Ho on December 27, 1958; (3) Katherine A. Chun on January 15, 1959; and (4) Rebecca A. Brown on June 24, 1960. David K. Roy also purchased the interest of one of the grandchildren designated as a remainderman in the will, Tadame Mori Ishida, on January 14, 1959.[4]

## II. *STANDARD OF REVIEW*

We review [a] circuit court's award of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawai'i,* 85 Hawai'i 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)) (brackets in original). "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire,* 79 Hawai'i at 112, 899 P.2d at 395 (citation omitted).

## III. *DISCUSSION*

On appeal, the Roys urge that the circuit court erred in granting the Morinoues' motion for summary judgment on the alternative grounds that (1) the Morinoues failed to make out a prima facie case of adverse possession, or (2) genuine issues of material fact

---

4. In their briefs, the Roys seem to assert that "David K. Roy, Jr.," who was involved in these transactions, and the defendant David D. Roy, Jr. are the same person, although there is no evidence to this effect in the record. We also note that none of the deeds involved in these transactions expressly identify L.C.A. 9932 as a subject property, although they expressly identify other tracts of land. Thus, in order to link L.C.A. 9932 to the conveyances described in the deeds, the Roys would seem to rely on the following catch-all phrase, which appears immediately after the property descriptions enumerated in each deed:

> AND ALSO all of the Grantor's undivided right, title, interest and estate in and to any other lands lying and situate in the District of North Kona, Island and County of Hawaii, Territory of Hawaii, in which the Grantor's father, John A. Hoopale, Deceased, may have

had any right, title and interest at the time of his death[.]

Notwithstanding the foregoing, and assuming their admissibility, these deeds, at the least, raise a genuine issue of material fact regarding the Roys' paper title to L.C.A. 9932. A similar genuine issue of material fact is likewise raised by virtue of Josephine Roy's purchase from Lily Hoopale, described *supra,* which apparently predated—and is therefore independent of and unaffected by—these subsequent transactions. *Cf. Deponte v. Ulupalakua Ranch, Ltd.,* 48 Haw. 17, 20, 395 P.2d 273, 275, *reh'g denied,* 48 Haw. 149, 396 P.2d 826 (1964) (noting that, "[i]n defendant's acquiring [a] quitclaim deed, there is nothing partaking of the nature of ... the abandonment of the defendant's claim to title by adverse possession").

remained.[5] We agree that the Morinoues failed to make out a prima facie case of adverse possession and that they have, therefore, not shown that they are entitled to judgment as a matter of law.

## A. Prima Facie Case Of Adverse Possession

"It is well established that one claiming title to real property by adverse possession must bear the burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous[,] and exclusive possession for the statutory period." *Lai v. Kukahiko*, 58 Haw. 362, 368–69, 569 P.2d 352, 357 (1977) (citations omitted).[6] The burden of "clear and positive proof" derives from the long-observed proposition that "[a]dverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner." *Territory v. Pai–a*, 34 Haw. 722, 726 (1938) (citation and internal quotation signals omitted). Thus, in the present case, the already formidable preconditions to prevailing on a motion for summary judgment combine with the similarly demanding requisites of a prima facie case of adverse possession in such a manner as to render the Morinoues' initial burden particularly heavy.

## B. Actual, Open, Notorious, and Continuous Possession

In *Okuna v. Nakahuna*, 60 Haw. 650, 656–57, 594 P.2d 128, 132 (1979), this court observed that "[i]nfrequent visits to [a] property to pick and gather fruits can hardly be said to constitute continuous possession or even [actual] possession at all." In that case, the individuals claiming title by adverse possession had picked fruit from loulu palm trees and coconuts from coconut trees on the property at issue, some of which had been planted and tended by a previous tenant of the claimants. *Id.* at 652–54, 594 P.2d at 129–31. On the other hand, full-scale and continuous "[c]ultivation, tillage of the soil, planting[,] and harvesting a crop" have been described as "superior indicia" of actual and continuous possession for purposes of establishing adverse possession. *See, e.g., Cheek v. Wainwright*, 246 Ga. 171, 269 S.E.2d 443, 445 (1980).

Between these two extremes lies a gray area, in which the courts must assess the strength of the record on a case-by-case basis. The sole evidence as to the extent and the nature of the Morinoues' "possession" of L.C.A. 9932 (as well as that of their predecessor in interest, Kinshiro Yamamoto) consists of the allegations set forth in paragraphs four and five of Ayako Morinoue's affidavit. *See supra* section I.B.1.b. Paragraph four simply avers that "[t]he property has been farmed by Plaintiffs since 1924." Although this factual allegation is not, as the Roys suggest, a conclusion of law or a finding of "ultimate fact," it is nevertheless, in our view, too vague, in and of itself, to sustain a claim of adverse possession, especially on summary judgment.

---

5. The Roys also challenge the admissibility of the exhibits and affidavits attached to the Morinoues' motion for summary judgment on a number of evidentiary grounds. The Morinoues counter that the Roys waived these issues by failing to object during the hearing on their motion for summary judgment and, in any case, that the documents were admissible and properly considered by the circuit court. Because we hold, even assuming that their exhibits and affidavits were fully admissible, that the Morinoues have not made out a prima facie case of adverse possession and have therefore failed to show that they are entitled to judgment as a matter of law, we need not reach the evidentiary questions.

6. The statutory period required for establishing title to real property through adverse possession was twenty years in the 1880s, but was reduced to ten years in 1898. *Lai*, 58 Haw. at 367 n. 4, 569 P.2d at 357 n. 4 (citing 1870 Haw. Sess. L. Act 22, § 1 and 1898 Haw. Sess. L. Act 19). The statutory period was restored to twenty years in 1973, but without affecting rights that had already matured as of that date. *Id.* (citing Hawai'i Revised Statutes (HRS) § 669–1(b) (Supp. 1975) and 1973 Haw. Sess. L. Act 26, § 6 at 32); *see also Campbell v. Hipawai Corp.*, 3 Haw.App. 11, 13–14, 639 P.2d 1119, 1120–21 (1982). Therefore, in order for the Morinoues to have made out a prima facie case of adverse possession, it was presumably necessary that they prove open, notorious, hostile, continuous, and exclusive possession of L.C.A. 9932 for either a ten-year period falling between 1924 (when Ayako Morinoue alleges that her family began farming the subject property) and 1973 or a twenty-year period commencing after 1973.

Paragraph five, which alleges that "Yamamoto planted coffee trees on the land prior to selling the land to Affiant's mother, and Plaintiffs have planted trees and tended the coffee trees or hired others to tend the coffee trees since 1924," offers no specifics as to how many trees were planted, where they were planted, how much of the land was occupied by the trees, what activities were involved in "tending" the trees, how often the trees were harvested, or whether such cultivation was visible and evident to the public. In other words, paragraph five is insufficient as a matter of law to establish that the Morinoues made "use of the land to such an extent and in such a manner as to put the world on notice" by means "so notorious as to attract the attention of every adverse claimant." *Cheek*, 269 S.E.2d at 445.

Indeed, neither paragraph four nor five constitutes "clear and positive proof" that the Morinoues' "possession" of L.C.A. 9932 was known to anyone in the community and, therefore, "notorious." Construing Ayako Morinoue's affidavit in the light most favorable to the Roys, we must hold that the Morinoues have not established—by clear and positive proof—a prima facie case of actual, open, notorious, and continuous possession of the subject property for any particular period of time.

### C. *Hostile and Exclusive Possession*

■ Similarly, the Morinoues have failed to meet their burden of showing that their possession of L.C.A. 9932 was hostile and exclusive. Specifically, there remains a genuine issue of material fact as to whether the Roys and/or their predecessors in interest had a cotenancy in the subject property.

As the Roys argue, it could be inferred from the language of the conveyance document, dated June 19, 1940, transferring Alinakai Kepoikai and Ami Charman's interest in L.C.A. 9932 to their brother, John A. Hoopale, *see supra* section I.B.2, that Hoopale had held only partial title to the subject property. The deed identifies the siblings' common interest in the land by way of inheritance through their mother, Kaoo, who was the daughter of Kealalio, Lumaaawe's only child. If, as the language of the deed appears to indicate, each of Kealalio's offspring inherited equal, undivided interests in L.C.A. 9932, then (1) Kaoo, as one of Kealalio's eight children, would have inherited an undivided one-eighth interest in the land, and (2) each of Kaoo's three children—*i.e.*, Alinakai Kepoikai, Ami Charman, and John A. Hoopale— would have inherited an undivided one-third of her undivided one-eighth interest, namely, an undivided one-twenty-fourth interest in L.C.A. 9932. Thus, when John A. Hoopale and his wife, Lily, sold their interest in L.C.A. 9932 to Kinshiro Yamamoto on October 13, 1920, *see supra* section I.B.1.a, they conveyed only an undivided one-twenty-fourth interest because his sisters—Alinakai Kepoikai and Ami Charman—still retained their interests.

The foregoing inference would seem to be bolstered by paragraph seven of Ayako Morinoue's affidavit, in which she avers, *inter alia,* that John A. Hoopale had stated, during two separate visits to her home, that "he had not intended to sell his sisters' shares in the property." *See supra* section I.B.1.b. It is therefore consistent that, as noted above, he purchased his sisters' interests in L.C.A. 9932 after having conveyed his own to Kinshiro Yamamoto. It is likewise consistent that, after John A. Hoopale's death, his widow, Lily, purported to sell those very interests to Josephine Roy, *see supra* section I.B.2, through whom the defendant Carlton A. Roy claims an interest. Finally, it would not·be inconsistent that David Roy would thereafter undertake, *see id.,* to purchase the interests in the land (if there were any) to which five of John A. Hoopale's heirs held title. *But see supra* note 4.

If they are cotenants with the Roys, the Morinoues and their predecessors in interest would be subject to a special burden in proving *hostile* possession of L.C.A. 9932; they would be obligated to show that they had acted in good faith in relation to their cotenants. *City and County of Honolulu v. Bennett,* 57 Haw. 195, 209, 552 P.2d 1380, 1390 (1976) (establishing rule that, "because of the general fiduciary relationship between cotenants, a tenant in common claiming by adverse possession must prove that he acted in

*good faith* towards the cotenants during the statutory period" (emphasis in original)).

In most circumstances, this requirement of good faith will in turn mandate that the tenant claiming adversely must *actually notify* his cotenants that he is claiming against them. In the following exceptional circumstances, however, good faith is satisfied by less than actual notice: where the tenant in possession has *no reason to suspect* that a cotenancy exists; or where the tenant in possession makes a *good faith, reasonable effort to notify* the cotenants but is unable to locate them; or where the tenants out of possession already have *actual knowledge* that the tenant in possession is claiming adversely to their interests. In these limited circumstances, the notice requirements will be satisfied by constructive notice and "open and notorious possession".

*Id.* at 209–10, 552 P.2d at 1390 (emphases in original) (footnote omitted).

The facts underlying *In re Keamo,* 3 Haw. App. 360, 650 P.2d 1365 (1982), clearly illustrate circumstances in which a tenant in possession may have "no reason to suspect" the existence of a cotenancy. In that case, the claimants' mother had abandoned her family while her children were infants and, unknown to the claimants, had begun a new family elsewhere. *Id.* at 362, 650 P.2d at 1367–68. The claimants' father had obtained a divorce from their mother, but the divorce decree failed to mention their mother's other children. *Id.* at 362, 650 P.2d at 1368. When their mother died, some forty years before the case arose, the circuit court "found and declared" the claimants to be her sole heirs, evidently not discovering the existence of the other children. *Id.* at 362–63, 650 P.2d at 1368. "In applying the *Bennett* test," the *Keamo* court ruled that "this case falls within the 'limited circumstances' category" and that the claimants "had 'no reason to suspect' that cotenants ... existed[.]" *Id.* at 368, 650 P.2d at 1371.

By contrast, in the present case, the Morinoues have not made a sufficient showing that they had "no reason to suspect" the existence of cotenants. It is true that paragraph six of Ayako Morinoue's affidavit, *see supra* section I.B.1.b, avers that, prior to 1952, the Morinoues had no "indication ... of a dispute regarding title to the land[.]" Paragraph six, however, is ambiguous at best because it is silent with respect to *why* the Morinoues had no such "indication." In particular, neither paragraph six nor any other portion of Ayako Morinoue's affidavit expressly avers that the Morinoues' recorded chain of title was free of any "indication" of cotenancies in the subject property.[7]

Therefore, because the burden of proving good faith was on the Morinoues, *see Bennett,* 57 Haw. at 209, 552 P.2d at 1390, they were required affirmatively to adduce evidence that there was "no reason to suspect that a cotenancy exist[ed]." *Id.* (emphasis omitted). Thus far, the Morinoues have not only failed to do so, but have actually injected evidence to the contrary into the record. In paragraph seven of her affidavit, *see supra* section I.B.1.b, Ayako Morinoue avers, *inter alia,* that in the course of his two visits to the Morinoues' home, John A. Hoopale expressly held out that "he had not intended to sell his sisters' shares in the property," representations that should have placed the Morinoues on actual notice of competing claims of title to L.C.A. 9932. Ayako Morinoue does not allege that she advised Hoopale at that time that the Morinoues claimed to hold the subject property adversely to the cotenancy interests that Hoopale described. Moreover, contrary to the Morinoues' contention, Hoopale's inquiries, in themselves, do not necessarily establish that he was aware that the Morinoues were purporting to hold the subject property adversely to his sisters' interests.

■ We acknowledge that Ayako Morinoue has alleged in paragraph ten of her affidavit that the "[p]laintiffs have defended the property against intrusion by posting signs and otherwise discouraging the Roys and others from exercising any unauthorized control over the property." *See supra* section I.B.1.b. We are also aware that, in para-

---

7. Both the Hoopale–to–Yamamoto and Yamamoto–to–Mizukami conveyances were by quit- claim deed, and neither expressly purported to transfer full title to L.C.A. 9932.

84

graph nine, she has averred that the "[p]laintiffs very clearly told the Roys that [the] [p]laintiffs were the rightful owners" of the subject property, presumably at the time that "Josephine Roy and her heirs came to ask about" it. *See id.*

The foregoing allegations, with elaboration, could potentially establish that the Morinoues placed the Roys on actual notice of hostile possession and could likewise establish exclusivity. However, the Ayako Morinoue affidavit does not identify when any of the events described in paragraphs nine and ten occurred. Accordingly, the affidavit fails as proof of the time when any period of allegedly hostile and exclusive possession of L.C.A. 9932 began. It could be inferred that the period began at some time prior to November 1989, because Ayako Morinoue mentions Josephine Roy in paragraph nine, and Carlton Roy averred in an affidavit that his mother, Josephine Roy, died in late November 1989. Beyond this inference, however, the record provides no guidance as to exactly when the Morinoues allegedly placed the Roys on notice of hostile and exclusive possession.

As noted above, the statutory period required for establishing title to real property through adverse possession for any period commencing after 1973 is twenty years. *See supra* note 6. But because we construe the evidence in the light most favorable to the Roys, we cannot, on the record before us, infer that the statutory period has been satisfied. We therefore hold that the Morinoues have failed to establish—by clear and positive proof—the elements of hostile and exclusive possession for the entire statutory period.

## IV. CONCLUSION

For the foregoing reasons, we vacate the amended judgment of the circuit court and remand for further proceedings consistent with this opinion.