96 P.3d 581

MAUNA KEA AGRIBUSINESS CO., INC., Plaintiff–Appellee

v.

NAUKA, Awa Pake, also known as Awa and C.W. Awa; Alina Apeo (w), also known as Alina Chung Peu (w); Kamaliiwahine Chung Peu; Chung Peu; Kupa (w), also known as Kupa Kahoohiki (w); Lono (w), also known as Lono Kahoohiki (w); Kaleikapuainui (k), also known as Kaleikapuainui Kahoohiki (k); Mary, also known as Mele Kahoohiki, Mele Kawailehua Kaoo and Mary Kaoo; K.M. Kahoohiki, also known as Mahoe Kahoohiki, heirs or assigns, and All Whom it may concern, Defendants–Appellees

and

Heidie Cariaga, Melinda Hurley, April Isabel, David Kaoo, Guy Kaoo, Hiram Kaoo, Jan Kaoo, Joseph Kaoo, Margaret Kaoo, Mayvin Kaoo, Thanya Kaoo, Sarah Kaoo–Lavea, Beatrice Miura, Danton Sugai, Gayle Sugai, Milton Sugai, and Saburo Sugai, Defendants–Appellants.

No. 25916.

Supreme Court of Hawai'i.

Aug. 25, 2004.

As Corrected Sept. 1, 2004.

Andrew B. Spenger (Native Hawaiian Legal Corporation), on the briefs, for defendants-appellants.

Donald E. Scearce (Cades Schutte), Honolulu, on the briefs, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that the Circuit Court of the Third Circuit [1] (the court) did not err in awarding Plaintiff–Appellee Mauna Kea Agribusiness Company, Incorporated (Mauna Kea) summary judgment against Defendants–Appellants Heidie Cariaga, Melinda Hurley, April Isabel, David Kaoo, Guy Kaoo, Hiram Kaoo, Jan Kaoo, Joseph Kaoo, Margaret Kaoo, Mayvin Kaoo, Thanya Kaoo, Sarah Kaoo–Lavea, Beatrice Miura, Danton Sugai, Gayle Sugai, Milton Sugai, and Saburo Sugai (collectively, Kaoos), in its quiet title action because Mauna Kea satisfied one of the exceptions to the good faith notice requirements under *City & County of Honolulu v. Bennett*, 57 Haw. 195, 209, 552 P.2d 1380, 1390 (1976). For at the time, Mauna Kea or its predecessors would have no reason to suspect, under the law precluding illegitimate children from inheriting patrilineal intestate property, that a cotenancy existed with the Kaoos or their ancestors.

**I.**

Mauna Kea filed this action to quiet its title to Apanas [2] 1 and 2 of Land Commission Award 10304 (the Properties), situated at Ka‘ū, Hawai‘i. The Properties were awarded to Nauka, who devised to E. Mose Kalaikoa, who conveyed to S. Kalaiko. S. Kalaiko died intestate, whereupon title to a one-fifth inter-est descended to each of S. Kalaikoa's five heirs: (1) Naiheahuahu Kalaikoa; (2) Kailiuakea; (3) Mose Kalaikoa; (4) Keamalu; and (5) Kupa, also known as Kupa Kahoohiki (Kupa).

Four-fifths of the Properties vested by mesne conveyances and corporate mergers in Mauna Kea through the first four heirs named above. Mauna Kea claims title to the remaining one-fifth interest of S. Kalaikoa's fifth heir, Kupa, by adverse possession.

Kupa did not convey her interest in the Properties during her life and died intestate, whereupon title to her one-fifth interest descended in one-twentieth interests to each of her four issue: (1) Lono, also known as Lono Kahoohiki (Lono); (2) Kaleikapuainui, also known as Kaleikapuainui Kahoohiki (Kaleikapuainui); (3) K.M. Kahoohiki, also known as Mahoe Kahoohiki (K.M. Kahoohiki); and (4) Mary, also known as Mele Kahoohiki, Mele Kawailehua Kaoo and Mary Kaoo (Mary).[3] Mary did not convey her one-twentieth interest in the Properties during her life and died intestate, whereupon title to her one-twentieth interest allegedly descended to her sole heir, Samson Kaoo. Samson Kaoo died on September 11, 1932. Kaoos are either illegitimate issue, or descendants of illegitimate issue, of Samson Kaoo.

According to the declarations of Edward Andrade Jr. and John C. Cross, from as early as the 1950s to the 1990s, Mauna Kea and its predecessors openly, notoriously, continuously, and exclusively used the Properties for agriculture, particularly for sugar cane. The declarations also evidence that from the 1990s to the present, Ernest Souza, lessee of Ka‘ū Agribusiness Co., Inc., a predecessor in title of Mauna Kea, has openly, notoriously, continuously, and exclusively used the Properties for dairy operations.

**II.**

Mauna Kea commenced this quiet title action on September 11, 2002, contending that

1. The Honorable Greg K. Nakamura presided.

2. "Apana" is Hawaiian for "stratum, flat, especially a coral flat." M. Pukui & S. Elbert, *Hawaiian Dictionary* 29 (rev. ed.1986).

3. According to Mauna Kea, there is no Bureau of Conveyances record, department of health death record, or probate record relating to the estates or determinations of the heirs of Lono, Kaleikapuainui, or K.M. Kahoohiki, the other issue of Kupa.

its predecessors in title were in adverse possession of the remaining one-fifth of the Properties in excess of 10 years prior to May 4, 1973, and in excess of 20 years prior to September 11, 2002.[4] Accordingly, Mauna Kea submits that the claims of all other persons having an estate or interest in the one-fifth share of the Properties are barred.

In their answer, Kaoos asserted that they had an undivided interest in the Properties as lineal heirs of Samson Kaoo, who, as mentioned previously, was the issue of Mary, the lineal heir to a one-twentieth interest in the Properties.

On March 5, 2003, Mauna Kea filed a motion for summary judgment, arguing that there was no genuine issue of material fact, and that it was entitled to judgment as a matter of law on the grounds that (1) there was no evidence that title to an interest in the Properties vested by deed, devise, or descent in Samson Kaoo; (2) even if there was evidence that an interest in land vested in Samson Kaoo, Kaoos cannot inherit by intestate succession through Samson Kaoo by operation of Revised Law of Hawaii (RLH) § 3307 (1925)[5] and *Machado v. Kualau*, 20 Haw. 722, 723 (1911); and (3) assuming, *arguendo*, Kaoos could establish title by descent from Samson Kaoo, Mauna Kea had nonetheless satisfied all of the elements as to adverse possession.

In their memorandum in opposition, Kaoos asserted (1) that there is evidence to support the finding that an undivided interest in the Properties vested in Samson Kaoo from his mother, Mary; (2) that *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and *Reed v. Campbell*, 476 U.S. 852, 106 S.Ct. 2234, 90 L.Ed.2d 858 (1986), required the court to retroactively apply *Trimble* to invalidate RLH § 3307 and thereby permit them to assert their inheritance rights against Mauna Kea's adverse possession claim; and (3) that (a) a co-tenancy existed between Mauna Kea and themselves in the Properties; (b) Mauna Kea failed to give actual notice to them as co-tenants, of its hostile holding for the requisite statutory period pursuant to *Bennett*, 57 Haw. at 209, 552 P.2d at 1390; and (c) Mauna Kea failed to satisfy the statutory period of adverse possession as to Apana 2.

In its reply memorandum, Mauna Kea maintained that the court need not address the constitutionality of RLH § 3307 inasmuch as Mauna Kea had satisfied all of the elements of adverse possession, including those under *Bennett*. It thus argued that the case could be decided without regard to that statute.[6]

On May 20, 2003, the court granted Mauna Kea's motion for summary judgment. The court declined to determine the constitutionality of RLH § 3307. But, the court posited that were *Trimble* applied retroactively, resulting in the purported creation of a cotenancy relationship, Mauna Kea would still have satisfied a *Bennett* exception to the requirement of actual notice:

> Even if *Trimble* were to apply retroactively, this does not necessarily mean that Plaintiff fails on its motion for summary judgment. The issue would be whether, in accordance with *Bennett*, Plaintiff acted in good faith towards Defendants.

> At the time of Samson Kaoo's death, under [RLH § 3307], his illegitimate children could not inherit from his estate.

**4.** "The statutory period required for establishing title to real property through adverse possession was twenty years in the 1880s, but was reduced to ten years in 1898." *Morinoue v. Roy*, 86 Hawai'i 76, 81 n. 6, 947 P.2d 944, 949 n. 6 (1997) (citations omitted). However, the statutory period was restored to twenty years in 1973, but without affecting rights that had already matured as of that date. *Id.* (citing Hawai'i Revised Statutes (HRS) § 669–1(b)) (citation omitted); *see* HRS § 669–1 (Supp.2003).

**5.** RLH § 3307 prevented patrilineal intestate inheritance by illegitimate children. The statute provided as follows:

Every illegitimate child shall be considered as an heir to his mother, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock.

**6.** In response to point (c), Mauna Kea submitted amended declarations for Edward Andrade Jr. and John C. Cross regarding Apana 2, which established that it could satisfy the elements of adverse possession for the statutory period as to Apana 2 of the Properties.

Therefore, ... *neither his illegitimate children nor their descendants would have been considered co-tenants of .Plaintiff's predecessors in interest as a matter of law.* Further, Plaintiff's predecessors in interest could not have reasonably predicted that the *Trimble* opinion would be issued in 1977 and retroactively applied. As such, as a matter of law, the Court determines that the *Bennett* good faith or notice requirement is satisfied by constructive notice and "open and notorious possession" of [the Properties].

(Emphasis added.)

On May 29, 2003, the court entered final judgment in favor of Mauna Kea and against Kaoos and all other defendants,[7] awarding Mauna Kea title to the Properties in fee simple absolute. Kaoos filed this appeal on June 23, 2003.

### III.

█ The standard of review to be applied by this court in reviewing an award of summary judgment is the same standard applicable to the circuit court's consideration of the summary judgment motion. *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).

### IV.

Kaoos raise two points on appeal: (1) genuine issues of material fact remain in dispute regarding the existence of a co-tenancy and the application of the good faith notice requirement and (2) the court erred inasmuch as RLH § 3307 should have been retroactively invalidated.

7. The judgment was also against all unknown

### V.

█ "It is well established that one claiming title to real property by adverse possession must bear the burden of proving by clear and positive proof, each element of actual, open, notorious, hostile, continuous[,] and exclusive possession for the statutory period." *Morinoue,* 86 Hawai'i at 81, 947 P.2d at 949 (quoting *Lai v. Kukahiko,* 58 Haw. 362, 368–69, 569 P.2d 352, 357 (1977) (citations omitted)). "The burden of clear and positive proof derives from the long-observed proposition that adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner." *Id.* (citation and internal quotation marks omitted).

█ Kaoos make no discernable argument in opposition to these elements of Mauna Kea's adverse possession claim. They contend only that there is a genuine issue of material fact regarding whether Mauna Kea and its predecessors established constructive good faith notice of its hostile possession to its alleged co-tenants. In *Bennett,* this court said that

because of the general fiduciary relationship between cotenants, a tenant in common claiming by adverse possession must prove that he acted in good faith towards the cotenants during the statutory period. In most circumstances, this requirement of good faith will in turn mandate that the tenant claiming adversely must *actually notify* his cotenants that he is claiming against them.

*Bennett,* 57 Haw. at 209, 552 P.2d at 1390 (emphasis added); *see also Morinoue,* 86 Hawai'i at 83, 947 P.2d at 951.

█ The good faith requirement, however, can be satisfied by less than actual notice where: (1) *the adverse possessor has no reason to suspect that a co-tenancy exists;* (2) the tenant in possession makes a good faith, reasonable effort to notify the co-tenants, but is unable to locate them; or (3) the tenants out of possession already have actual knowledge that the tenant in possession is claiming adversely to their interests. *Bennett,* 57 Haw. at 209, 552 P.2d at 1390; *see also*

parties claiming an interest in the Properties.

*Morinoue,* 86 Hawai'i at 83, 947 P.2d at 951; *Petran v. Allencastre,* 91 Hawai'i 545, 556, 985 P.2d 1112, 1123 (App.1999) (reasoning that "a cotenant in possession ought to have known of a cotenancy if evidence thereof existed in the Bureau of Conveyances"). "In these limited circumstances, the notice requirement will be satisfied by constructive notice and open and notorious possession." *Bennett,* 57 Haw. at 209–10, 552 P.2d at 1390 (footnote and internal quotation marks omitted).

Kaoos maintain that Mauna Kea had "reason to suspect" their ancestors were co-tenants. *Id.* at 209, 552 P.2d at 1390. But, at the time of Samson Kaoo's death in 1932, his illegitimate children could not inherit from his estate under RLH § 3307.[8] Moreover, in *Machado,* this court had confirmed the restrictive effect of the statute prior to Samson Kaoo's death. *Machado* involved an appeal from an ejectment action. 20 Haw. at 722. There, father, the owner of the land in controversy, died intestate leaving defendant son (Son) and a grandson (Grandson). *Id.* Son was legitimate; however, Grandson was the illegitimate issue of father's deceased daughter. *Id.* Grandson conveyed his inherited interest in the land to plaintiff. *Id.* Thereafter, plaintiff brought an action to eject Son. *Id.* The trial court entered a decision in favor of plaintiff pursuant to RLH § 2511, the identically worded predecessor to RLH § 3307. *Id.* This court set the trial court's decision aside on appeal, noting that "[t]he illegitimate [Grandson] is rendered by [RLH § 2511] capable of inheriting from his mother, but not from any one else." *Id.* at 723. This court concluded, in applying RLH § 2511, that

> [i]n the case at bar the mother of the illegitimate [Grandson] left no property. The inheritance is not from her, but from her father [i.e., the illegitimate child's grandfather], the patentee. The statute has given to the illegitimate [Grandson] the capacity to inherit from his mother, but not from his grandfather.

*Id.* at 723–24. Accordingly, this court entered judgment in favor of the defendant Son.

Under RLH § 3307 and *Machado,* at the time of Samson Kaoo's death, Kaoos would have been "capable of inheriting from [their] mother, but not from [Samson Kaoo]." *Machado,* 20 Haw. at 723. Neither Samson Kaoo's illegitimate children nor their descendants would have inherited the interest of Samson Kaoo, their ancestor. In the absence of such an interest, they would not have been considered co-tenants of Mauna Kea's predecessors in interest as a matter of law. Thus, on this ground, Mauna Kea was not afforded any "reason to suspect" that Kaoos might be co-tenants. *Bennett,* 57 Haw. at 209, 552 P.2d at 1390.

Furthermore, as the court indicated, Mauna Kea's predecessors in interest could not have reasonably predicted that *Trimble* would be issued in 1977 so as to impute a "reason to suspect" a co-tenancy. *Id.* at 209, 552 P.2d at 1390. Accordingly, we hold that the court was correct in deciding that Mauna Kea satisfied the *Bennett* good faith actual notice requirement by constructive notice and open and notorious possession of the land. *Id.* at 209–10, 552 P.2d at 1390.

## VI.

In *Ka'ū Agribusiness Co. v. Heirs or Assigns of Ahulau,* 105 Hawai'i 182, 187, 95 P.3d 613, 618 (2004), we invalidated, *inter alia,* RLH § 4815 (1935),[9] the successor statute to RLH § 3307. There, plaintiff sought to quiet its title to real property it had acquired from father's only legitimate child. *Id.* Defendants were the heirs of father's illegitimate children, who had been prevented from inheriting from father by operation of RLH § 4815. *Id.* The circuit court granted plaintiff summary judgment. *Id.* at 186, 95 P.3d at 617. On appeal, we held that RLH § 4815 is constitutionally invalid for violating the U.S. and Hawai'i constitutions' equal protection clauses and for offending the "state interest in avoiding unjustified discrimination

---

**8.** *See supra* note 5.

**9.** RLH § 4815 provided that "[e]very illegitimate child shall be considered as an heir to his moth-

er, and shall inherit her estate, in whole or in part, as the case may be, in like manner as if he had been born in lawful wedlock."

against children born out of wedlock." *Id.* at 192, 95 P.3d at 623 (quoting *Reed,* 476 U.S. at 856, 106 S.Ct. 2234).[10]

We have no reason to retroactively invalidate RLH § 3307 here, because, assuming *arguendo* that RLH § 3307 were to be invalidated in this case, Mauna Kea has, as indicated *supra,* established that it had no "reason to suspect that a cotenancy exist[ed]" with the Kaoos, and the Kaoos have failed to supply any evidence to the contrary. *Bennett,* 57 Haw. at 209, 552 P.2d at 1390 (emphasis omitted).

### VII.

 Kaoos argue that even if they do not have an interest, the heirs of Kupa do, because "a co-tenancy existed between Mauna Kea ... and the heirs of Kupa regardless of the operation of [RLH § 3307]." Assuming, *arguendo,* there were legitimate issue of Kupa, that would not raise a genuine issue of material fact.

> A party responding to a summary judgment motion must set forth facts showing that there is a genuine issue for trial. HRCP Rule 56(e). HRCP Rule 56(c) requires that the facts be material. A fact is material if proof of the fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. If it does not have that effect, then it would not be a material fact. A genuine issue with respect to that fact would not foreclose the granting of a summary judgment motion.

*Ka'ū,* 105 Hawai'i at 188, 95 P.3d at 619 (citations omitted). Whether Mauna Kea acted in good faith towards the other descendants of Kupa would neither establish Kaoos' claim of title to the alleged one-twentieth interest of Samson Kaoos' illegitimate issue, nor refute Mauna Kea's adverse possession defense to Kaoos' claim. *See Ka'ū,* 105 Hawai'i at 187, 95 P.3d at 618 (holding that the presence of parties with potential interests in a property that is the subject of a quiet title action is not "indispensable" to quiet title to

said property, under *Mossman v. Hawaiian Trust Co.,* 45 Haw. 1, 361 P.2d 374 (1961)).

Furthermore, as was noted in *Ka'ū,* "[a] bill to quiet title may not be defeated by showing that the plaintiff's interest, otherwise sufficient to support the bill, is subject to possibly superior rights in third persons not parties to the suit." *Ka'ū,* 105 Hawai'i at 187, 95 P.3d at 618 (quoting *United States v. Oregon,* 295 U.S. 1, 24, 55 S.Ct. 610, 79 L.Ed. 1267 (1935)). Moreover, "[i]t is enough that the interest asserted by the plaintiff in possession of land is superior to that of those who are parties defendant." *Id.* (quoting *Oregon,* 295 U.S. at 25, 55 S.Ct. 610). Therefore, Kaoos cannot argue that Mauna Kea's claim should fail because it is "subject to possibly superior rights in third persons[,]" such as other descendants of Kupa.

### VIII.

For the foregoing reasons, the court's May 20, 2003 order granting Mauna Kea's summary judgment against Kaoos and its May 29, 2003 final judgment are affirmed.

---

10. In *Ka'ū,* we decided that *Trimble* would not be given retroactive effect under the circumstances of the case. Retroactive effect in *Trimble* was not afforded in *Ka'ū,* because (1) plaintiff was an innocent purchaser who detrimentally relied on RLH § 4815; and (2) defendants' paternity had not been conclusively established.