145 P.3d 784

**WAILUKU AGRIBUSINESS CO., INC., Plaintiff-Appellee,**

v.

**Harvey AH SAM, Patrick H. Ah Sam, Frederick K. Bailey, Jr., Kenneth D. Kahoohanohano, Richert M. Kamaiopili, Susan K. Koehler, Maebelle M. Librando, Iraday U. Bailey, Patrick E.K. Bailey, Peter L. Bailey, Robert Allen Bell, Patrick K.T. Chu, Rochelle J. Gardanier, Charles Kauluwehi Maxwell, Sr., Judith L. Nagamine, Jacqueline Kuahine Amina Rapoza, Janice L. Revells, Clovis Gyetvai, Elizabeth Keala Han, Glenn F. Kahoohanohano, Helene R. Saronitman, Hannah E.H. Souza, Lillie Lani Bailey Mundon, Charles E. St. Germain, and Wayne Chun, Defendants-Appellants,**

**and**

**Kalapuna (k)[1] and his wife, Kekui (w)[2], Kahololio (w), also known as Hololio Hennessee (w), Heirs or Assigns, Caroline K. Brown, Gayle J. Silva, Ellen P. Parker, Ayieeshya Bonnie Mapua Murphy, July Simeona, Carol A.H. Gaylord,**

---

1. In Hawaiian genealogical terms, a "(k)" following a name denotes the person is "male[.]" Edith Kawelohea McKinzie, *Hawaiian Genealogies*, vol. 1, xiii (1983).

2. In Hawaiian genealogical terms, a "(w)" following a name denotes the person is "female[.]" Edith Kawelohea McKinzie, *Hawaiian Genealogies*, vol. 1, xiii.

Pearl Leimomi Kamaiopili, Charles Pila, Edward K. Amina, Joyce L. Acidera, Jade V. Miyamoto, Harmon Ah Sam, Joan L. Powell, Pamela Roe, Benedetta L. Davidson, Fredna Yim Cobb–Adams, Mabel E.H. Griffin, Herbert Kaluau, Sr., Shirley Maile Bell, Bonnie A. Meyers, and all Whom it may Concern, Defendants.

No. 25930.

Intermediate Court of Appeals of Hawai'i.

Aug. 1, 2006.

Certiorari Granted Jan. 16, 2007.

Kevin H.S. Yuen, on the briefs, for defendants-appellants.

Gary G. Grimmer and Melissa H. Lambert (Carlsmith Ball) (Donald E. Scearce (Cades Schutte) on the brief), Honolulu, for plaintiff-appellee.

WATANABE, Presiding J., FOLEY, and NAKAMURA, JJ.

Opinion of the Court by WATANABE, Presiding J.

This appeal stems from an action filed by Plaintiff–Appellee Wailuku Agribusiness Co., Inc. (Wailuku) in the Circuit Court of the Second Circuit (the circuit court) against "Kalapuna (k) and his wife, Kekui (w), Kahololio (w), also known as Hololio Hennessee (w) [ (all now deceased) ], Heirs or Assigns, and All Whom It May Concern[,]" (Named Defendants) to establish ownership, by paper title or adverse possession, of two parcels of land located at Waikapū, Maui, Hawai'i. Defendants–Appellants (Appellants),[3] who claim to be descendants and heirs of the sister of the original grantee of the two parcels, contend that the circuit court[4] erroneously granted summary judgment in favor of Wailuku on Wailuku's adverse possession claims.

We affirm.

## I. BACKGROUND

By Land Commission Award (L.C.Aw.) 8672, dated September 27, 1852, Kaluau (k) (Kaluau) acquired the following three parcels of land situated in Waikapū, Maui, Hawai'i: (1) Āpana[5] 1, which consisted of 1.55 acres of "[t]aro and open dry land" located in Kuaiwa,

---

**3.** Defendants–Appellants (Appellants) are Harvey Ah Sam, Patrick H. Ah Sam, Frederick K. Bailey, Jr., Kenneth D. Kahoohanohano, Richert M. Kamaiopili, Susan K. Koehler, Maebelle M. Librando, Iraday U. Bailey, Patrick E.K. Bailey, Peter L. Bailey, Robert Allen Bell, Patrick K.T. Chu, Rochelle J. Gardanier, Charles Kauluwehi Maxwell, Sr., Judith L. Nagamine, Jacqueline Kuahine Amina Rapoza, Janice L. Revells, Clovis Gyetvai, Elizabeth Keala Han, Glenn F. Kahoo-

hanohano, Helene R. Saronitman, Hannah E.H. Souza, Lillie Lani Bailey Mundon, Charles E. St. Germain, and Wayne Chun.

**4.** The Honorable Joseph E. Cardoza presided.

**5.** "Āpana" is a Hawaiian word that means "land parcel[.]" Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 28 (rev. ed.1986).

Waikapū; (2) Āpana 2,[6] which consisted of .25 acres of "[t]aro land" located in Kuaiwa, Waikapū; and (3) Āpana 3, which consisted of .06 acres of "irrigated field" located in Hāli'ipālala, Waikapū.

Kaluau did not convey title to the āpana during his lifetime and died intestate and unmarried around 1855. He was survived by his mother, Kekiu[7] (w) (Kekiu); his father, Kalapuna (k) (Kalapuna); his sister Kahololio[8] (w) (Kahololio); his sister Kahaleamau[9] (w) (Kahaleamau); and his nephew Kaluau–Opio[10] (k) (Kaluau–Opio), the son of Kaluau's deceased brother.

At the time of Kaluau's death, the laws governing intestate succession provided, in relevant part, as follows:

> If the intestate shall leave no issue, his estate shall descend one half to his widow, and the other half to his father and mother as tenants in common; and *if he leaves no widow, nor issue, the whole shall descend to his father and mother, or to either of them if only one be alive* [.]

An Act to Regulate the Descent of Property both Real and Person, 1850 Penal Code of the Hawaiian Islands, at 181 (emphasis added). Thus, Kaluau's āpana would have descended to Kalapuna and Kekiu, as tenants in common, if both were living at Kaluau's death.

On October 13, 1855, Kalapuna, Piena (k) (Piena) (Kalapuna's brother-in-law or cousin-in-law), and Puuweuweu[11] (w), also known as Puweuweu and Puuweweu (Puuweuweu) (Piena's wife), executed a deed that sold and conveyed to John Richardson (Richardson), for the amount of $30, "the land which was inherited by us from [Kaluau] . . ., being that entire piece of land situate at Kuaiwa, Waikapu, Maui" (the Deed to Richardson). The deed was signed by Kalapuna, Piena, and Puuweuweu by "x" marks, witnessed by Asa Hopu (Hopu) and Nelly Richardson (Nelly), but not recorded until June 10, 1878, after Nelly personally appeared before Hawai'i Supreme Court Justice A. Francis Judd and acknowledged that: (1) on October 13, 1855, she was living with her brother, Richardson, who was now deceased; (2) she saw Kalapuna, Piena, and Puuweuweu, all now deceased, place their "x" marks to the deed; and (3) she and Hopu, who was now deceased, signed their names to the deed as subscribing witnesses.

During the intervening twenty-three years between the execution and recording of the Deed to Richardson, the following events allegedly occurred:

- Richardson died intestate, and pursuant to an order filed in Probate No. 1210, the administrators of his estate conveyed, by deed dated September 7, 1860, what Wailuku alleges is Āpana 1,[12] to James

---

6. Āpana 2 is not at issue in these proceedings. The complaint filed by Wailuku did not seek to quiet title to Āpana 2.

7. In its pleadings, Plaintiff–Appellee Wailuku Agribusiness Co., Inc. (Wailuku) refers to Kaluau's mother as "Kekui[.]" Defendants insist that Kaluau's mother's name was "Kekiu[,]" and they have buttressed their assertion by documents in the record. For purposes of this opinion, we will refer to Kaluau's mother as "Kekiu[,]" except when a document quoted specifically refers to her as "Kekui[.]"

8. In various documents contained in the record on appeal, "Kahololio" is also referred to as "Hololio[,]" "Hololio Hennessee[,]" or "Kealiikawahine Hololio Hennessey[.]" For purposes of this opinion, we will refer to her as "Kahololio[,]" except when a document quoted specifically refers to her as "Hololio[,]" "Hololio Hennessee[,]" or "Kealiikawahine Hololio Hennessey[.]"

9. In various documents contained in the record on appeal, "Kahaleamau" is also referred to as

"Haleamau[.]" For purposes of this opinion, we will refer to her as "Kahaleamau[,]" except when a document quoted specifically refers to her as "Haleamau[.]"

10. In various documents contained in the record on appeal, "Kaluau–Opio" is also referred to as "Kaluau-opio" or "Kaluauopio[.]" For purposes of this opinion, we will refer to him as "Kaluau–Opio[,]" except when a document quoted specifically refers to him as "Kaluau-opio" or "Kaluauopio[.]"

11. In various documents contained in the record on appeal, "Puuweuweu" is also referred to as "Puweuweu" or "Puuweweu[.]" For purposes of this opinion, we will refer to her as "Puuweuweu[,]" except when a document quoted specifically refers to her as "Puweuweu" or "Puuweweu[.]"

12. The deed from John Richardson to James Louzada is not contained in the record on appeal.

Louzada. Through mesne conveyances, Wailuku acquired this property on November 20, 1894.

- On October 2, 1866, Kahaleamau (Kaluau's sister and Kalapuna's daughter) filed a petition with circuit court Judge A.M. Kahalewai (Judge Kahalewai) in Probate No. 321, requesting that: (1) she be appointed the administrator of the estate of Kalapuna, who had recently died intestate; and (2) Kalapuna's estate be settled.

- By an order entered on October 31, 1866, Judge Kahalawai appointed Kahaleamau as administrator of Kalapuna's estate and directed that "once [Kahaleamau has] paid the demand of the Court of $10 and taken possession of [Kalapuna's] property, it shall belong to [Kahaleamau and Kahololio, Kalapuna's] surviving children."

- On August 1, 1873, Kahololio filed a petition with the "Circuit Court of Maui" in *In re Estate of Kaluau*, Probate No. 649, requesting that she be appointed the administrator and an heir of Kaluau's estate.

- On October 30, 1873, after taking depositions of various witnesses who testified that Kaluau had died circa 1855, survived by his mother and father, both since deceased, with Kaluau's mother dying first, the circuit court concluded as follows:

    On the evidence adduced the Court decrees that Haleamau (w) Kahololio (w) and Kaluau-opio (k) are equally entitled to inherit in the property of Kaluau (k) Decd. being the only surviving blood relations of the deceased.

- On December 15, 1873, Royal Patent 6483 [13] was apparently posthumously issued to Kaluau for the three āpana awarded by L.C. Aw. 8672.

- On January 7 and March 3, 1875, Haleamau (Kaluau's sister) and Kaluau–Opio (Kaluau's nephew) along with their spouses, deeded their respective interests "in all the estate of Kaluau (k) of Waikapu, Maui, deceased intestate" to Kahololio.

Pursuant to summary judgment orders entered on December 9, 2002,[14] March 7, 2003, and April 28, 2003, the circuit court decided Wailuku's adverse possession claims of Defendants in Wailuku's favor. The orders were reduced to a final judgment on June 2, 2003, and this appeal followed.

## II. PROCEDURAL HISTORY

### A. *Wailuku's Complaint*

On February 7, 2002, Wailuku commenced this quiet title action against named Named Defendants, alleging, on information and belief that:

1. Apana[ ] 1 and 3 of Land Commission Award 8672, Royal Patent 6483, were granted to Kaluau, who did not convey during life and died intestate circa 1855, whereupon title descended to his parents:

    A. KEKUI (w) did not convey during life and died intestate, whereupon title descended to Kaluauopio (k), the child of her deceased issue, and Haleamau (w), her issue, both of whom conveyed by Deed dated January 7, 1875, recorded in Book 51, Page 305, to KAHOLOLIO (w), also known as HOLOLIO HENNESSEE (w), her issue, of whom nothing more is heard.

    B. Kalapuna (k), reciting that he was the father of Kaluau (k), conveyed Apana 1 by Deed dated October 13, 1855, recorded in Book 56, Page 22, to John Richardson, after which title vested by mesne conveyances in [Wailuku]. KALAPUNA (k) did not convey Apana 3

---

13. A copy of Royal Patent 6483 is not included in the record on appeal.

14. The December 9, 2002 summary judgment order granted Wailuku's summary judgment motion filed on October 8, 2002 as to Defendants Charles Pila (Pila) and July Simeona (Simeona). In his answer to Wailuku's complaint, Pila claimed title to the āpana in question "as an heir of the Kings and Queens of Hawaii." Simeona's answer to Wailuku's complaint is a bit confusing, but he seems to assert that Wailuku's complaint should be dismissed or set aside, so an appeal can be taken to federal court. Neither Pila nor Simeona has joined in this appeal, and Appellants have not challenged the December 9, 2002 summary judgment order on appeal.

during life and died intestate, whereupon title descended to Kaluauopio (k), the child of his deceased issue, and Haleamau (w), his issue, both of whom conveyed by Deed dated January 7, 1875, recorded in Book 51, Page 305, to KAHOLOLIO (w), also known as HOLOLIO HENNESSEE (w), his issue, of whom nothing more is heard.

2. [Wailuku] and its predecessors in title were in adverse possession of the real property described above in excess of 10 years prior to May 4, 1973, and in excess of 20 years prior to the date hereof. The claims of all persons of an estate or interest in the real property described above, adverse to [Wailuku's] fee simple title, are barred by adverse possession thereof by [Wailuku] and its predecessors in title in excess of 10 years prior to May 4, 1973, and in excess of 20 years prior to the date hereof.

Wailuku demanded that the circuit court enter judgment that Wailuku was the owner in fee simple of Āpana 1 and 3.

Appellants filed their answers to Wailuku's complaint shortly thereafter, claiming an interest in Āpana 1 and 3 through intestate succession, as descendants and heirs of Kahololio. Eighteen additional individuals who were not specifically named in Wailuku's complaint (Other Defendants) also answered Wailuku's complaint, claiming an interest in the properties through intestate succession. Named Defendants, Appellants, Other Defendants, and Defendants Charles Pila (Pila) and July Simeona [15] (Simeona) are hereafter collectively referred to as Defendants.

B. *Wailuku's Summary Judgment Motion on Āpana 1*

On February 4, 2003, Wailuku filed its summary judgment motion on L.C. Aw. 8672, Apana 1, asserting both paper title and title by adverse possession as grounds for summary judgment.

In a memorandum in support of its summary judgment motion on Āpana 1, Wailuku argued that the evidence established as a matter of law that it was vested with paper title and title by adverse possession to Āpana 1.

As to its paper title argument, Wailuku asserted as follows:

Apana 1 was granted in 1852 to Kaluau, who died intestate survived by his mother, KEKUI (w), and father, KALAPUNA (k). Haw.Rev.Stat. § 532–4(b) (when intestate leaves no issue or spouse, property descends to intestate's parents).

Kaluau's mother, KEKUI (w), predeceased his father, KALAPUNA (k). In 1855, Kaluau's father, KALAPUNA (k), conveyed "that entire piece of land at Kuaiwa, Waikapu, Maui" to John Richardson, after which title vested by mesne conveyances in [Wailuku].

Defendants claim title to a ½ interest in Apana 1 by intestate succession through Kaluau's mother, KEKUI (w). For purposes of this memorandum, [Wailuku] assumes that if Kaluau's property descended to his mother, KEKUI (w), and father, KALAPUNA (k), equally, and if KEKUI (w) did not convey during life, then title to her ½ interest descended to her heirs from whom Defendants are descended, rather than to her husband, KALAPUNA (k), even though her husband's 1855 conveyance to [Wailuku's] predecessor was of all of Apana 1, and not just a ½ interest.

(Citation and footnote omitted.)

Regarding its adverse possession claim to Āpana 1, Wailuku argued that even if title to Āpana 1 descended to Kaluau's parents equally and title to Kekiu's 1/2 interest descended to her heirs (from whom Appellants claim to be descended) rather than to Kekiu's husband, the use of Āpana 1 by Wailuku and its predecessors "for a period greatly exceeding the limitation statutes (1) establishes [Wailuku's] title to the ½ interest of KEKUI (w) by adverse possession, and (2) bars Defendants' action to recover possession from [Wailuku]."

On February 18, 2003, Appellants filed their memorandum in opposition to Wailuku's summary judgment motion on Āpana 1. They maintained that genuine issues of material fact remained concerning: "(1) the ade-

15. See footnote 14.

quacy of notice given to all those claiming or who may claim an interest in Apana 1, (2) the failure of [Wailuku's] paper title to Apana 1 by reason of defective conveyances, and (3) the failure of [Wailuku] to comply with Hawaii law in proving its quiet title claim based upon adverse possession."

More specifically, Appellants argued that:

(1) Wailuku failed to properly notify all potential claimants of the present action;

(2) Wailuku's paper title to Āpana 1 was defective because: (a) the land transferred to Richardson was not specifically described as being Āpana 1, (b) Piena and Puuweuweu had no title and interest in Āpana 1 to convey to Richardson, and (c) Kalapuna could not convey proper title to Āpana 1 without Kekiu's consent and signature; and

(3) Because Wailuku failed to provide probative evidence that it (or its predecessors) notified all cotenants of Āpana 1 of its intent to exercise adverse possession to Āpana 1, Wailuku failed to establish sufficient grounds for its claim of adverse possession.

The hearing on Wailuku's summary judgment motion on Āpana 1 took place on February 26, 2003. At the hearing, the circuit court assumed a failure by Wailuku to prove its paper title to Āpana 1 and stated that the only question remaining was whether Wailuku had proved title by adverse possession.

By order dated March 7, 2003, the circuit court granted Wailuku's summary judgment motion as to Āpana 1 and determined, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b), "that there is no just reason for delay" and therefore directed "entry of final judgment in favor of [Wailuku] and against all named Defendants, their heirs and assigns," including Appellants.

C. *Wailuku's Summary Judgment Motion on Āpana 3*

On March 19, 2003, Wailuku filed its summary judgment motion on L.C. Aw. 8672, Āpana 3. In its memorandum in support of the motion, Wailuku noted that Appellants and Other Defendants claimed title to Āpana 3 by descent from Kahololio. Wailuku argued that the testimony of Katsumi Tadakuma (Tadakuma), Komao Mochizuki (Mochi-

zuki), Chuck Dando (Dando), Clayton Suzuki (Suzuki), and Avery B. Chumbley (Chumbley), as reflected in their attached declarations,

evidences that [Wailuku] and its predecessors openly, notoriously, continuously, and exclusively used Apana 3 for sugar cane cultivation from as early as 1935 to the late 1980's, and for pineapple cultivation from the late 1980's to 1997.

Thus, even if there were evidence to support Defendants' claim of title by descent from KAHOLOLIO ..., use of the land by [Wailuku] and its predecessors for a period greatly exceeding the limitation statutes (1) establishes [Wailuku's] title by adverse possession, and (2) bars an action by a paper title claimant to recover possession from [Wailuku]. Haw.Rev.Stat. §§ 669-1 and 657-31 (limitation statutes); *Campbell v. Hipawai Corp.*, 3 Haw.App. 11, 13-14, 639 P.2d 1119, 1120-21 (1982) (statutory periods increased from ten to twenty years effective May 4, 1973); *Leialoha v. Wolter*, 21 Haw. 624 (1913) (running of statutory periods vests title in adverse possessor, bars title claimant's action to recover possession from adverse possessor); *Gomes v. Upchurch*, 50 Haw. 125, 432 P.2d 890 (1967) (running of limitation statutes bars action to recover possession from, and vests title in, party in possession for limitation periods).

(Citations and footnote omitted.)

In a memorandum opposing Wailuku's summary judgment motion on Āpana 3, Appellants argued that: (1) Wailuku failed to meet its burden of showing good faith towards Appellants with respect to Āpana 3 because Wailuku or its predecessors did not notify all cotenants not in possession of Āpana 3, including Appellants or their predecessors, of Wailuku's intent to adversely possess Āpana 3; and (2) Wailuku "failed to meet its burden of showing by clear and positive proof based upon credible, probative evidence each and every element of its claim of adverse possession to Apana 3."

Following a hearing held on April 16, 2003, the circuit court entered an order on April 28, 2003, granting Wailuku's summary judg-

ment motion on Āpana 3. The order included HRCP Rule 54(b) language and directed entry of final judgment in favor of Wailuku and against all Named Defendants, their heirs and assigns, including Appellants.

### D. *The Final Judgment*

On June 2, 2003, the circuit court entered final judgment in favor of Wailuku and against all Named Defendants, their heirs and assigns, including Appellants. The final judgment declared Wailuku to be the owner in fee simple of Āpana 1 and 3.

On June 27, 2003, Appellants filed their notice of appeal.

### III. JURISDICTION

■ Initially, Wailuku contests this court's jurisdiction to hear this appeal. Wailuku points out that Appellants' claims were decided by summary judgment orders that were entered by the circuit court on March 7, 2003 and April 28, 2003 and certified as final under HRCP Rule 54(b). Since Appellants' notice of appeal was filed on June 27, 2003, more than thirty (30) days after entry of the summary judgment orders, Wailuku contends that Appellants' appeal was untimely.

The record shows, however, that the summary judgment orders were not reduced to a final judgment in accordance with HRCP Rule 58[16] until June 2, 2003. In light of HRCP Rule 58, *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 119, 869 P.2d 1334, 1338 (1994) (holding that "after March 31, 1994 an appeal from an order that purports to be a final order as to all claims and parties in civil cases may be taken only after the order has been reduced to a judgment in favor of or against the parties"), and *Oppenheimer v. AIG Hawai'i Ins. Co.,* 77 Hawai'i 88, 93, 881 P.2d 1234, 1239 (1994) (holding that under *Jenkins,* "a party cannot appeal from a circuit court order even though the order may contain 54(b) certification lan-

guage; the order must be reduced to a judgment and the 54(b) certification language must be contained therein"), we conclude that Wailuku's jurisdictional argument has no merit.

### IV. STANDARD OF REVIEW

"Summary judgment is a drastic remedy which must be cautiously invoked in order to avoid improperly depriving a party to a lawsuit of the right to a trial on disputed factual issues." *Ocwen Fed. Bank, FSB v. Russell,* 99 Hawai'i 173, 182, 53 P.3d 312, 321 (App. 2002) (internal quotation marks and brackets omitted).

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56(c) (2000). " 'A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.' " *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997) (quoting *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982)).

The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.

First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment

---

16. Hawai'i Rules of Civil Procedure Rule 58 provides, in relevant part, as follows:

**ENTRY OF JUDGMENT.**
[W]hen the court directs entry of judgment for other relief, the judge shall promptly settle or approve the form of the judgment and direct that it be entered by the clerk. The filing of the judgment in the office of the clerk constitutes the entry of the judgment; and the judgment is not effective before such entry. The entry of the judgment shall not be delayed for the taxing of costs. *Every judgment shall be set forth on a separate document.*
(Emphasis added.)

as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, and any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party.

The evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial.

*Ocwen Fed. Bank, FSB,* 99 Hawai'i at 182, 53 P.3d at 321 (quoting *GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.), *aff'd and modified,* 80 Hawai'i 118, 905 P.2d 624 (1995)).

On appeal, an award of summary judgment is reviewed under the same standard applied by the trial court. *Wong–Leong v. Hawaiian Indep. Refinery,* 76 Hawai'i 433, 438, 879 P.2d 538, 543 (1994). This involves a three-step analysis:

First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. . . .

Secondly, we determine whether the moving party's showing has established facts which . . . justify a judgment in movant's favor. *The motion must stand self-sufficient and cannot succeed because the opposition is weak . . . .* [6]

When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue.

*AARTS Productions, Inc. v. Crocker Nat'l Bank,* 179 Cal.App.3d 1061, 225 Cal.Rptr. 203, 205–06 (1986) (citations omitted). *See also Wright,* 11 Cal.App.4th at 1012, 14 Cal.Rptr.2d at 595.

6. In *GECC Financial Corp. [v. Jaffarian],* 80 Hawai'i at 119, 905 P.2d at 625, this court modified the [Intermediate Court of Appeal's] decision in *GECC Financial Corp.,* 79 Hawai'i 516, 904 P.2d 530, insofar as the plaintiff-movant is not required to [initially] disprove affirmative defenses asserted by a defendant in order to prevail on a motion for summary judgment.

*Pioneer Mill Co. v. Dow,* 90 Hawai'i 289, 296, 978 P.2d 727, 734 (1999) (footnote in original, brackets omitted) (quoting *GECC Fin. Corp.,* 79 Hawai'i at 522, 904 P.2d at 536).

Because the present case involves summary judgment on two separate properties, we apply the *Jaffarian* three-step analysis to evaluate whether the circuit court properly entered summary judgment as to Āpana 1 and 3.

## V. DISCUSSION

### A. *The Summary Judgment as to Āpana 1*

#### 1. *The issues framed by the pleadings*

As to Āpana 1, Wailuku's complaint alleged the following: (1) Āpana 1 was granted to Kaluau, who did not convey during life and died intestate, whereupon title descended in his parents; (2) Kaluau's mother, Kekiu, did not convey during life and died intestate, whereupon her title descended to Kahololio, Kaluau–Opio and Kahaleamau; (3) Kaluau-Opio and Kahaleamau both conveyed their respective interests in Āpana 1 to Kahololio by deed dated January 7, 1875; and (4) Kaluau's father, Kalapuna, conveyed Āpana 1 to Richardson by deed dated October 13,

1855, after which title vested by mesne conveyances in Wailuku. Wailuku further alleged that Wailuku and its predecessors in title were in adverse possession of Āpana 1 in excess of the required statutory periods. Wailuku sought judgment that Wailuku is the fee simple owner of Āpana 1.

In their answers, Defendants pleaded that they own a fee interest in Āpana 1 by intestate succession to Kahololio.

2. *Whether Wailuku established material facts justifying a judgment in its favor*

a. *The material elements of an adverse possession claim*

Initially, we note that the circuit court assumed that Wailuku did not have valid paper title to Āpana 1. Since this assumption has not been challenged on appeal, our examination focuses on whether Wailuku established the material facts necessary to establish the essential elements of its adverse possession claim to Āpana 1 for which Wailuku sought summary judgment in its favor.

■■■ In order to establish title to real property by adverse possession, a claimant "must bear the burden of proving by clear and positive proof each element of actual, open, notorious, hostile, continuous, and exclusive possession for the statutory period." *Morinoue*, 86 Hawai'i at 81, 947 P.2d at 949 (brackets and quotation marks omitted). "The burden of 'clear and positive proof' derives from the long-observed proposition that 'adverse possession is to be taken strictly, and every presumption is in favor of a

possession in subordination to the rightful owner.'" *Id.* (quoting *Territory v. Pai-a*, 34 Haw. 722, 726 (1938)) (brackets omitted). "[A]ctual possession" is established where a claimant shows that the claimant entered upon and physically occupied or used the land in question. *Leialoha (k) v. Wolter*, 21 Haw. 624, 629 (1913). "Mere claim of title without express proof of actual possession for the statutory period is ineffective." *In re State of Hawaii to Register Title to Real Property*, 49 Haw. 537, 553, 425 P.2d 83, 93 (1967).

■■■ The "open, continuous and hostile" possession element is established where a claimant demonstrates that claimant's use of the land was open and visible on the property, *Kainea v. Kreuger*, 31 Haw. 108, 112 (1929), such that the world was put on notice of claimant's possession "by means 'so notorious as to attract the attention of every adverse claimant.'" *Morinoue*, 86 Hawai'i at 82, 947 P.2d at 950 (citation omitted).

■■■ "The element of hostility is satisfied by showing possession for oneself under a claim of right.[17] Such possession must import a denial of the owner's title and be established by clear and positive proof[,]" *Pioneer Mill Co.*, 90 Hawai'i at 299, 978 P.2d at 737 (brackets, ellipsis, and quotation marks omitted, footnote added), since "[a] possession, however open and long continued it may be, will not operate as a disseizen and commencement of a new title unless it imports a denial of the owner's title." *Pai-a*, 34 Haw. at 726. Thus, one claiming property by adverse possession must make known to the

---

17. Pursuant to Article XVI, § 12 of the Hawai'i Constitution, which became effective following the November 7, 1978 election:

**QUIETING TITLE**

No person shall be deprived of title to an estate or interest in real property by another person claiming actual, continuous, hostile, exclusive, open and notorious possession of such lands, except to real property of five acres or less. Such claim may be asserted in *good faith* by any person not more than once in twenty years.

(Emphasis added.)

The Hawai'i Legislature subsequently defined and codified in Hawaii Revised Statutes § 669-1 (1993) what constitutes "good faith" for purposes of an adverse possession claim, as follows:

Object of action....

... Good faith means that, under all the facts and circumstances, a reasonable person would believe that the person has an interest in title to the lands in question and such belief is based on inheritance, a written instrument of conveyance, or the judgment of a court of competent jurisdiction.

In *Pioneer Mill Co. v. Dow*, 90 Hawai'i 289, 978 P.2d 727 (1999), the Hawai'i Supreme Court held that the aforementioned good-faith requirement was prospective in nature and did not apply to claims that had matured under the statutes and common law in existence prior to the November 7, 1978 ratification of the Hawai'i Constitution, Article XVI, § 12. *Id.* at 291 n. 2, 978 P.2d at 729 n. 2.

record owners of the property any claim of ownership and the hostile nature of the occupancy. *Id.* at 727. The Hawai'i Supreme Court has also recognized, however, that

> [i]n the absence of any explanation whatsoever, "where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile."

*Pioneer Mill Co.*, 90 Hawai'i at 299, 978 P.2d at 737 (quoting *Albertina v. Kapiolani Estate*, 14 Haw. 321, 325 (1902)).

▮ The "continuous possession" element of an adverse possession claim requires proof that the claimant used the property for the full statutory period [18] without interruption or breach. 2 C.J.S. *Adverse Possession* § 149 (2003 & Supp.2005). "[I]nfrequent visits to a property to pick and gather fruits" do not amount to continuous possession. *Morinoue*, 86 Hawai'i at 81, 947 P.2d at 949 (brackets omitted). On the other hand, "full-scale and continuous 'cultivation, tillage of the soil, planting, and harvesting a crop' have been described as 'superior indicia' of actual and continuous possession for purposes of establishing adverse possession." *Id.* (brackets omitted). Moreover, as a general rule, successive possessions of the land by different individuals or entities "cannot be tacked together so as to make a continuous possession[.]" *Kainea*, 31 at 115. The "possession must be connected and continuous so that the possession of the true owner shall not constructively intervene between them[.]" *Id.* However, "where there is such a privity of estate or title" among the several possessors that the several possessions can be referred to the original entry onto the land, the possessions may be joined and are regarded as a continuous possession. *Id.* For example, privity exists between successive occupants of property where there is "a succession of relationships created by deed or other act or by operation of law", as in the case of landlord and tenant, ancestor and heirs, and vendor and vendee. *Id.* at 116.

▮ To fulfill the "exclusive possession" element, the "claimant must hold possession of the land for [the claimant] as [the claimant's] own, and not for another, or must maintain exclusive dominion over the property and appropriation of it to his or her own use and benefit." 2 C.J.S. *Adverse Possession* § 58 (2003) (footnotes omitted). Exclusive possession does not exist, for example, where, in apparent hostility to the person claiming title to land by adverse possession, other persons who were not tenants or relatives of the claimant occupied the same land. *Edmonds v. Wery*, 27 Haw. 621, 625 (1923). Additionally,

> [i]n disputes between cotenants, the presumption is that a cotenant in possession does not occupy the premises adversely to his [or her] cotenants but in common with them. The rationale underlying this rule is persuasive. Each cotenant is entitled to enter and occupy the common property. The cotenant in possession is deemed to hold the property permissively. Hence, the remaining cotenants are justified in assuming that the cotenant in possession is not asserting a claim of exclusive ownership.
>
> This presumption may be overcome only by conduct of one cotenant which constitutes an ouster or disseisin of the other cotenants. An ouster is the wrongful dispossession or exclusion from the disputed property of a party who is entitled to possession.... [O]uster must be (1) "actual," meaning a physical dispossession or (2) its equivalent: a demand for possession by the cotenant out of possession and a refusal by the cotenant claiming by reason of adverse possession.... [T]he cotenant claiming through adverse possession must show certain essential requirements which amount to an ouster: (1) a clear intent to claim adversely; (2) adverse possession in

---

18. During the 1880's, the required statutory period for establishing title to real property through adverse possession was twenty years. This period was reduced to ten years in 1898 and restored to twenty years in 1973, without affecting rights "that had already matured as of that date." *Morinoue v. Roy*, 86 Hawai'i 76, 81 n. 6, 947 P.2d 944, 949 n. 6.

fact; and (3) knowledge or notice of the hostile holding brought home to the other cotenant or cotenants.

*Redfearn v. Kuhia,* 53 Haw. 378, 381–82, 494 P.2d 562, 564 (1972) (citations omitted). Thus, a cotenant cannot prevail on an adverse possession claim where he or she did not oust the other cotenant from the property and thereby demonstrate an unequivocal assertion of exclusive ownership that excluded the cotenant's interests. *Id.*

### b. *The facts established by Wailuku as to Āpana 1*

In support of its paper title claim to Āpana 1, Wailuku attached the following documents to its memorandum in support of its summary judgment motion as to Āpana 1:

(1) The declaration of Colleen H. Uahinui (Uahinui), the operations manager of the Historic Title Department of Title Guaranty of Hawaii, Incorporated, indicating that her title search of Āpana 1 disclosed the following facts:

Apana 1, situate at Kuaiwa in Waikapu, was granted to Kaluau in 1852.

Witnesses testified in 1873 in 2nd Cir. Probate 649 that Kaluau had died circa 1855 survived by his mother, KEKUI (w), and father, KALAPUNA (k), both since deceased, with his mother, KEKUI (w) having died first, and that his father, KALAPUNA (k), had charge of and lived on the land.

KALAPUNA (k), reciting that he was Kaluau's father, conveyed Apana 1 by Deed dated October 13, 1855, recorded in Book 56, Page 22, to John Richardson, after which title vested by mesne conveyances in [WAILUKU] as follows:

. . . .

According to Uahinui's declaration:

The 2nd Cir. Probate 649 court decreed in 1873 that since Kaluau's parents, KEKUI (w) and KALAPUNA (k), were both deceased, Kaluau's heirs were his only surviving blood relatives in 1873: his sister, Haleamau, his nephew, Kaluau-opio, and his sister, KAHOLOLIO (w).

Kaluau's sister, Haleamau, and nephew, Kaluau-opio, conveyed all of their interest in Kaluau's estate by Deed dated January 7, 1875, recorded in Book 51, Page 305, to Kaluau's sister, KAHOLOLIO (w). There is no Bureau of Conveyances record of a conveyance by, and no judicial record of the probate of the estate or determination of the heirs of, KAHOLOLIO (w), also known as HOLOLIO HENNESSEE (w).

Annexed as Exhibit 1 to Uahinui's declaration was what Uahinui referred to as "a true and correct copy of 2nd Cir. Probate 649."

(2) The declaration of Frances N. Frazier (Frazier) in which Frazier summarized her experience translating documents from the Hawaiian language to English and indicated that "a true and correct copy of [her] translation of Deed dated October 13, 1855, recorded in Liber 56, Page 22, from Kalapuna (k) to John Richardson" was annexed to her declaration.

(3) A copy of Frazier's Hawaiian-to-English translation of the Deed to Richardson, which includes the following conveyance language:

Know all men by these presents that I, Kalapuna, the own father of Kaluau, deceased, and Piena, his kaikoike*, the heirs of aforesaid Kaluau, and Puuweuweu, the wife of aforesaid Piena, do sell and convey absolutely the land which was inherited by us from the said deceased, unto John Richardson and his heirs, executors and administrators forever, being that entire piece of land situate at Kuaiwa, Waikapu, Maui, as follows: The consideration for the conveyance of this land on this day is that John Richardson has paid into our hands Thirty Dollars, as stated herein. Therefore said place has been conveyed absolutely unto John Richardson, with everything situate upon and pertaining to it, and we shall be responsible for defending this conveyance if dispute should arise by anyone who shall deny our right to convey absolutely unto John Richardson and his heirs, executors and assigns forever.

In witness whereof we set our hands and seals this 13th day of October, A.D. 1855, at Waikapu, Maui.

| Done before me: | Kalapuna His X Mark |
| Asa Hopu | Piena His X Mark |
| Nelly Richardson | Puuweuweu Her X Mark |

Translator's notes: *kaikoike: Spelled kaikoeke in the Pukui–Elbert Dictionary: brother-in-law or male cousin-in-law of a male, etc.

Beneath the foregoing translation, Frazier added the following commentary:

I generally do not translate an English acknowledgment of a deed, but I think the circumstances in this case should be included with my translation of the Hawaiian deed.

Honolulu, Island of Oahu, Hawaiian Islands SS. On this 10th day of June, A.D. 1878, personally appeared before me Mrs. Nelly Richardson Everett of Waikapu, Maui, personally known to me who being by me duly sworn deposed and said that she is the Nelly Richardson whose name appears as a subscribing witness to the within deed and that at the date thereof, i.e., October 13, 1855, she was at Waikapu, Maui, living with her brother John Richardson now deceased—that she saw Kalapuna, Piena and Puuweuweu sign their names to the foregoing deed by severally making their cross marks and that she the deponent and Asa Hopu who is now dead—then and there signed their names as subscribing witnesses and that the said Grantors Kalapuna, Piena and Puuweuweu are now all dead—upon the foregoing testimony I certify the execution of the within deed to be proven to my satisfaction.

A. Francis Judd, Justice of the Supreme Court Recorded 10 June 1878.

In support of its adverse possession claim, Wailuku attached the following to its memorandum in support of its summary judgment motion:

(1) The declaration of Tadakuma, stating that: (a) he has "been familiar with ... Āpana 1 ... since as early as 1935"; and (b) Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1] for sugar cane cultivation" "[f]rom as early as 1935 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present[;]"

(2) The declaration of Mochizuki, stating that: (a) he has "been familiar with ... Āpana 1 ... since as early as 1937"; and (b) Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1] for sugar cane cultivation" "[f]rom as early as 1937 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present[;]"

(3) The declaration of Dando, a Wailuku employee for twenty-eight years, stating that Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1] for sugar cane cultivation" "[f]rom as early as 1974 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present[;]"

(4) The declaration of Suzuki, a Wailuku employee for twenty-four years, stating that Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1] for sugar cane cultivation" "[f]rom as early as 1978 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present[;]"

(5) The declaration of Chumbley, President of Wailuku, stating that: (a) he had knowledge of the facts stated in his declaration "based on records and maps regarding land use"; (b) he was familiar with Āpana 1; (c) Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1] for sugar cane cultivation" "[f]rom as early as 1894 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present[;]"

(6) A map, attached to the declarations of Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley as Exhibit A, on which Āpana 1 was highlighted in yellow; and

(7) A copy of the following documents from Wailuku's records, which were attached to Chumbley's declaration:

Exhibit B: A lease entered into between Wailuku and Maui Pineapple Company, Ltd. (Maui Pine) on October 17, 1995, pursuant to which Maui Pine leased certain parcels of real property situate at Wailuku, Maui; [19]

19. Pursuant to the lease, "[Wailuku] agrees to lease Fields No. 731 (67 acres), No. 727 (54 acres), No. 723 (67 acres), No. 725 (36 acres) for a total of 224 acres for planting by [Maui Pineap-

Exhibit C: An aerial photo allegedly taken in 1933, on which Āpana 1 was shaded in yellow by Chumbley;

Exhibit D: An aerial photo allegedly taken of Field 81 in 1953, on which Āpana 1 was shaded in yellow by Chumbley;

Exhibit E: An aerial photo allegedly taken of Field 82 in 1953, on which Āpana 1 was shaded in yellow by Chumbley;

Exhibit F: A 1975 drip irrigation layout of Field 81, on which Āpana 1 was shaded in yellow by Chumbley;

Exhibit G: A 1975 drip irrigation layout of Field 82, on which Āpana 1 was shaded in yellow by Chumbley; and

Exhibit H: An aerial photo taken in 1987, on which Āpana 1 was shaded in yellow by Chumbley.

c. *The Admissibility of the Documents Submitted by Wailuku as to Āpana 1*

On appeal, Appellants contend that the declarations of Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley in support of Wailuku's summary judgment motions were "conclusory, vague and contained inadmissible evidence" and that "the [circuit] court erred in allowing said declarations to factor into its decision to grant said motions." We therefore examine whether the proffered evidence met the admissibility requirements of HRCP Rule 56(e). That rule provides in its entirety as follows:

(e) **Form of affidavits; further testimony; defense required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In accordance with HRCP Rule 56(e), therefore, affidavits in support or opposition to a summary judgment motion shall: (1) be made on personal knowledge, (2) set forth facts as would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated therein.

■ The declarations of Tadakuma and Mochizuki do not specify how either individual acquired the information that Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 1]" for sugar cane or pineapple cultivation. Each declaration merely states, in conclusory fashion, that Tadakuma or Mochizuki has "personal knowledge of the facts stated herein, [is] competent to testify in this action, and declare[s] under penalty of law that the following is true and correct." Because Tadakuma and Mochizuki failed to explain how the facts alleged in their declarations were based on their personal knowledge, or provide a basis from which their personal knowledge could be inferred, their declarations were inadmissible under the standards set forth in HRCP Rule 56(e).

■ The declarations of Dando and Suzuki, on their face, do appear to satisfy the express requirements of HRCP Rule 56(e). First, the declarations were made on personal knowledge, evidenced by the statements that Dando and Suzuki were employees of Wailuku for twenty-eight and twenty-four years, respectively, and were "familiar with the land designated as Apana 1[.]" Second,

ple Company, Ltd. (Maui Pine)] as soon as possible in 1997. Likewise [Wailuku] agrees to lease Fields No. 733 (102[ ] acres), No. 729 (41 acres), No. 715 (27 acres) for a total of 170 acres for planting by [Maui Pine] as soon as possible in 1998." It is not clear from the lease that Āpana 1 is included in the acreage leased to Maui Pine.

256

the declarations set forth facts that would be admissible in evidence. In their declarations, Dando and Suzuki stated, based on their personal knowledge, that Āpana 1 was used for sugar cane and pineapple cultivation and the periods during which Wailuku used the land for such purposes. Third, because Dando and Suzuki had personal knowledge of the facts stated in their declarations, there does not appear to be any question that they would be competent to testify about the historical uses of Āpana 1. Thus, nothing in HRCP Rule 56(e) precludes the statements made in the declarations of Dando and Suzuki.

■ Chumbley's declaration begins: "I, AVERY B. CHUMBLEY, am the President of [Wailuku], *have knowledge of the facts stated herein based on records and maps regarding land use,* am competent to testify in this action, and declare under penalty of law that the following is true and correct." (Emphasis added.) Although Chumbley's declaration, on its face, appears to violate the express requirement that "affidavits shall be made on personal knowledge", HRCP 56(e), the Hawai'i Supreme Court has recognized that proof that facts set forth in an affidavit are based on personal knowledge may be reasonably inferred from the position and nature of the affiant. *Stallard v. Consol. Maui, Inc.,* 103 Hawai'i 468, 476, 83 P.3d 731, 739 (2004). In *Stallard,* the supreme court held that it may be reasonably inferred that the president of a company that developed a resort had personal knowledge of the operations of the resort. *Id.* As such, the statements contained in Chumbley's declaration were admissible and could be considered for summary judgment purposes.

■ Parts of Uahinui's declaration did not satisfy the requirements of HRCP Rule 56(e). Uahinui declared that she or others under her supervision had conducted a careful search of "the indices in the State of Hawaii" at various state offices "as to the title to Apana 1" and the search disclosed various facts that Uahinui set forth in her declaration. Although HRCP Rule 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served

therewith[,]" Uahinui did not attach sworn or certified copies of the documents she relied on to establish the facts set forth in her declaration, with one exception: Uahinui did attach a copy of Frazier's Hawaiian–to–English translation of the deed from Kalapuna, Piena, and Puuweuweu to Richardson, which Frazier attested was translated "truly and correctly to the best of my ability."

■ We note particularly that Uahinui declared that "a true and correct copy of 2nd Cir. Probate 649" was annexed as Exhibit 1 to her declaration. However, since Uahinui was not the preparer or custodian of the court records, her declaration of the truth and correctness of the exhibit did not authenticate the exhibit, as required by HRCP Rule 56(e).

> 3. *Whether the admissible facts proffered by Wailuku established a prima facie case of adverse possession as to Āpana 1*

■ The declarations of Dando, Suzuki, and Chumbley clearly set forth facts that establish the open, notorious, and continuous possession elements for establishing title by adverse possession. As to the hostile and exclusive nature of Wailuku's possession of Āpana 1, Wailuku proffered the October 13, 1855 deed from Kalapuna, Piena, and Puuweuweu to Richardson, which was recorded in 1878, as evidence of its claim of right to Āpana 1. The Deed to Richardson, as translated by Frazier, sold and conveyed "absolutely the land which was inherited ... from [Kaluau] ... being that entire piece of land situate at Kuaiwa, Waikapu, Maui[.]" The deed further provided that

> said place has been conveyed absolutely unto [Richardson], with everything situate upon and pertaining to it, and we shall be responsible for defending this conveyance if dispute should arise by anyone who shall deny our right to convey absolutely unto [Richardson] and his heirs, executors and assigns forever.

Although the deed, on its face, did not specifically mention Āpana 1 or define the metes and bounds of the land being conveyed, the declarations of Dando, Suzuki, and Chumbley

that Wailuku or its predecessors, under color of the 1855 deed, had been using Āpana 1 for agricultural purposes for the statutory period provide evidence of Wailuku's hostile and exclusive possession of Āpana 1.

We conclude, therefore, that Wailuku established a prima facie case of adverse possession as to Āpana 1.

4. *Whether Defendants demonstrated the existence of a triable, material factual issue as to Wailuku's adverse possession of Āpana 1*

In their memorandum in opposition to Wailuku's summary judgment motion on Āpana 1, Defendants argued that: (1) Wailuku failed to properly notify all potential claimants of the present action because the complaint, summons, and publication named "Kekui", rather than "Kekiu", as a Defendant, and the complaint and the published notice of the filing of the lawsuit failed to identify the heirs or descendants of Piena and Puuweuweu; (2) Wailuku did not properly acquire paper title to Āpana 1; and (3) Wailuku failed to establish sufficient grounds for its claim of adverse possession.

In support of their first two arguments, Defendants attached the following documents:

(1) The declaration of Patsy Moana Kamaleilani Kai (Kai), who stated that she has a Master's Degree in Library Studies and a Certificate in Archives from the University of Hawaii at Manoa and that, based on her extensive research of court and other government records, Kaluau's mother's name was Kekiu, not Kekui. Kai referred to a number of exhibits attached to her declaration which she claimed raised genuine issues of material fact regarding the validity of the Deed to Richardson from which Wailuku claimed paper title to Āpana 1. Kai claimed that these documents demonstrated that the Deed to Richardson was not signed by Kekiu, as required for a valid paper title, and the deed also did not describe the land being conveyed as Āpana 1 of L.C. Aw. 8672, thus calling into question which parcel of land was actually conveyed to Richardson.

(2) The declaration of David T. Taira, a Hawaiian language translator, certifying the truth and correctness of his Hawaiian–to–English translations of the following documents attached to his declaration: (a) L.C. Aw. 8672 to Kaluau; (b) the deed from Kalapuna and others to John Richardson, dated October 13, 1855; (c) the application by Kahololio to the Circuit Judge of the Second District, seeking to be appointed as administrator and heir to "all the estate of Kaluau (k), the deceased[;]" (d) the deed from Haleamau and Kaluau–Opio to Kahololio, dated January 7, 1875; (e) the petition of Kahaleamau in Second Circuit, Probate No. 321, dated October 2, 1866, requesting appointment as administrator for Kalapuna's estate; and (f) a letter, dated January 7, 2003, from David T. Taira to Appellant Hannah E.H. Souza, regarding the misspelling of "Kekiu" as "Kekui[.]" These documents buttressed Appellants' argument that Kaluau's mother's name was Kekiu, not Kekui, and that Kekiu did not sign the Deed to Richardson.

As to Appellants' first argument, the answers filed by Defendants reflect that they claimed title to the lands being quieted as heirs of Kahololio. Since the complaint filed by Wailuku and the published notice of the filing of the lawsuit named Kahololio and her "heirs or assigns" as Defendants, we conclude that the misspelling of Kekiu's name was harmless as to Appellants.

Appellants' concern about the failure of the complaint to identify the heirs or descendants of Piena and Puuweuweu is misplaced, since the record reflects that both individuals conveyed any title they may have had in Āpana 1 to Richardson; therefore, their heirs would have no remaining interest in Āpana 1 and were not required to be notified of Wailuku's complaint. *See Mauna Kea Agribusiness Co. v. Nauka,* 105 Hawai'i 252, 257, 96 P.3d 581, 586 (2004) (holding that persons with potential interests in property are not indispensable parties to an action to quiet title to the property and the fact that the quiet title claimant's interest is subject to possibly superior rights in third persons who are not parties to the lawsuit is not fatal to the quiet title action).

As to Appellants' second argument, the record indicates that the circuit court assumed that Richardson did not acquire proper paper title and consequently, based its order granting summary judgment as to Āpana 1 on Wailuku's adverse possession claim. Therefore, the propriety of Wailuku's paper title is not at issue on appeal.

As to their third point, Appellants argued that because Kekiu had not signed the Deed to Richardson, Richardson was a cotenant with Kekiu and Wailuku therefore had the burden of adducing evidence that it or its predecessors "attempted to notify co-tenants of its exclusive usage, possession and occupation of the subject property." Specifically, Appellants contended that, pursuant to *City & County of Honolulu v. Bennett*, 57 Haw. 195, 209, 552 P.2d 1380, 1390 (1976), a "tenant claiming adversely must *actually notify* his [or her] cotenants that he [or she] is claiming against them[,]" and Wailuku failed to produce any evidence that "notice was given to any cotenants not in possession nor to any of their predecessors that it intended to exercise adverse possession with respect to Apana 1 before adverse possession began running against them."

In *Bennett*, the Hawai'i Supreme Court set forth the following rule:

[B]ecause of the general fiduciary relationship between cotenants, a tenant in common claiming by adverse possession must prove that he acted in *good faith* towards the cotenants during the statutory period. In most circumstances, this requirement of good faith will in turn mandate that the tenant claiming adversely must *actually notify* his cotenants that he is claiming against them.

*Id.* The supreme court has explained, however, that

[t]he good faith requirement . . . can be satisfied by less than actual notice where: (1) *the adverse possessor has no reason to suspect that a co-tenancy exists;* (2) the tenant in possession makes a good faith, reasonable effort to notify the co-tenants, but is unable to locate them; or (3) the tenants out of possession already have actual knowledge that the tenant in possession is claiming adversely to their interests.

*Mauna Kea Agribusiness Co. v. Nauka*, 105 Hawai'i at 255, 96 P.3d at 584. For example, the supreme court has held that if one claiming title to lands by adverse possession

does not enter into possession as the cotenant but as the owner of the entire estate under a color of title extending to the whole estate where for instance, . . . one buys from one who is in fact a cotenant but who undertakes to convey the entire estate, his [or her] possession is adverse to those who might otherwise be treated as his [or her] cotenants.

*Peters v. Kupihea*, 39 Haw. 327, 330–31 (1952). Similarly, in *Kalamakee v. Wharton*, 16 Haw. 228 (1904), the supreme court held:

As between the co-tenants under the common title of descent from the patentee, none of the acts if done by one of them . . . would have justified the other in thinking that there was a claim of exclusive ownership. As between such co-tenants when "the co-tenancy is known or recognized, more significant acts or conduct would generally be required, for the co-tenant in possession would in such case naturally be supposed to be acting merely in the exercise of his [or her] own rights and not in denial of his [or her] co-tenant's rights. There may be other relationships of a more fiduciary nature, the recognition of which would require acts of a yet more significant character to bring home to the real owner notice of a hostile claim." *Smith v. Hamakua Mill Co.*, 13 Haw. [716,] 721.

*But the case of a grantee coming into the land under a deed from one of such cotenants purporting to convey the entirety is different. It can not [ (sic) ] be said prima facie that such grantee regards himself [or herself] as a co-tenant . . . .*

. . . .

Acts of ownership by one admitting his [or her] co-tenancy and within the rights of a co-tenant would require no attention, *although if done by one having color of title as sole owner they ought to be noticed by the other co-tenant because they would*

*presumably be based upon the colorable title to the whole estate.*

*Id.* at 232–34 (emphases added).

In this case, the facts adduced by Wailuku, which were unrebutted by Appellants, demonstrate that Wailuku or its predecessors entered upon Āpana 1 pursuant to a deed that purported to convey the whole estate inherited from Kaluau in Kuaiwa, Waikapū, Maui. In light of the foregoing case law, and since Appellants failed to adduce any evidence to counter Wailuku's evidence establishing the elements of adverse possession, we conclude that summary judgment in favor of Wailuku as to Āpana 1 was properly entered.

### B. *The Summary Judgment as to Āpana 3*

#### 1. *The issues framed by the pleadings*

With respect to Āpana 3, Wailuku claimed title only by adverse possession. Wailuku's complaint alleged that: (1) Appellants claim title by descent from Kahololio, an heir to Kaluau to whom Āpana 3 was awarded in 1852; (2) the testimony of Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley evidences that Wailuku and its predecessors and lessees "openly, notoriously, continuously, and exclusively used [Āpana 3] for sugar cane cultivation" "[f]rom as early as 1935 to the late 1980's," and "for pineapple cultivation" "[f]rom the late 1980's" "to [the] present"; and (3) the evidence establishes that Wailuku and its predecessors and lessees used Āpana 3 for a period greatly exceeding the limitation statutes and thus establishes Wailuku's title to Āpana 3 by adverse possession and bars an action by a paper title claimant to recover possession from Wailuku.

#### 2. *Whether Wailuku established material facts justifying a judgment in its favor*

In support of its summary judgment motion on Āpana 3, Wailuku submitted documentation very similar to the documents submitted for its summary judgment motion on Āpana 1. Thus, the declarations of Tadakuma, Mochizuki, Dando, Suzuki, and Chumbley were submitted with their attached exhibits, stating that Wailuku and its predecessors and lessees used Āpana 3 for agricultural purposes during the stated periods.

For the reasons articulated above as to Āpana 1, we conclude that the declarations of Tadakuma and Mochizuki were inadmissible to support Wailuku's summary judgment motion as to Āpana 3. However, we conclude that the declarations of Dando, Suzuki, and Chumbley established, prima facie, the essential elements of Wailuku's adverse possession claim as to Āpana 3.

#### 3. *Whether Appellants demonstrated the existence of a triable material factual issue as to Āpana 3*

In opposing Wailuku's summary judgment motion as to Āpana 3, Appellants contended that: (1) Wailuku had failed to meet its burden of showing good faith towards Appellants because there were genuine issues of material fact as to whether Appellants were cotenants of Āpana 3 with Wailuku; and (2) Wailuku failed to meet its burden of showing by clear and positive proof based upon credible, probative evidence each and every element of its claim of adverse possession to Āpana 3.

As to Appellants' first argument, Appellants put forth no evidence that Wailuku had any record title to Āpana 3 that conflicted with Appellants' inherited interest in Āpana 3. There being no evidence of a cotenancy between Wailuku and Appellants, the legal principles governing cotenancy were inapplicable to Āpana 3 as a matter of law.

As to Appellants' second argument, the sole document submitted by Appellants in opposition to Wailuku's summary judgment motion was a declaration by Kai, which included many opinion statements that do not appear to be based on specific facts and are inadmissible. Kai also expressed concern that Āpana 3 contained a possible family burial ground that Wailuku cleared "irresponsibly[,]" and she requested that further work by Wailuku on Āpana 3 be stopped.

We conclude that the evidence adduced by Appellants as to Āpana 3 failed to raise any genuine issue of material fact as to the actu-

al, open, hostile, notorious, continuous, and exclusive possession of Āpana 3 by Wailuku and its predecessors and lessees for the statutory period. Accordingly, the circuit court properly granted Wailuku's summary judgment motion as to Āpana 3.

## VI. CONCLUSION

For the reasons set forth above, we affirm: (1) the "Order Granting [Wailuku's] Summary Judgment Motion and Directing Entry of Final Judgment on L.C. Aw. 8672, Apana 1[,]" entered by the circuit court on March 7, 2003; (2) the "Order Granting [Wailuku's] Summary Judgment Motion and Directing Entry of Final Judgment on L.C. Aw. 8672, Apana 3[,]" entered by the circuit court on April 28, 2003; and (3) the Final Judgment entered by the circuit court on June 2, 2003.